USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 2-23-12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SHIRLEY DIMPS,

                          Plaintiff,

          -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES and
TACONIC CORRECTIONAL FACILITY,

                          Defendants.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

10 Civ. 1688 (KMW) (GAY)

TO THE HONORABLE KIMBA M. WOOD, United States District Judge:


     Plaintiff Shirley Dimps is employed by the New York State Department of

Correctional Services ("NYS DOCS") at the Taconic Correctional Facility in Bedford

Hills, New York.  Plaintiff originally commenced this *pro se* action alleging employment

discrimination on the basis of race and disability pursuant to Title VII of the Civil Rights

Act of 1963, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101 *et seq.* and the New York State Human Rights Law ("HRL"), N.Y. Exec.

Law §§ 290 to 297.  Plaintiff thereafter filed a motion to amend; by Decision and Order

dated March 4, 2011, the undersigned granted plaintiff's motion in part, to allow the

incorporation of factual allegations relevant to plaintiff's Title VII and ADA claims set

forth in her proposed Amended Complaint.  On or about April 1, 2011, in accordance

with this Court's directive, plaintiff filed an Amended Complaint wherein she alleges that

Copies mailed / ~~handed / faxed~~ to counsel  2 / 23 / 12

defendants discriminated against her on the basis of her disability.[1]  Presently before this Court is defendants' motion to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") for lack of subject matter jurisdiction.  For the reasons that follow, I respectfully recommend that defendants' motion should be granted.

## I. RULE 12(b)(1) STANDARD OF REVIEW

In deciding a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court must assume the truth of the factual allegations in the complaint but should not draw inferences favorable to the party asserting jurisdiction.  See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).  Further, in considering a 12(b)(1) motion, courts "need not accept as true contested jurisdictional allegations.  Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings, such as affidavits."  See Alston v. Microsoft Corp., No. 08 Civ. 3547, 2009 WL 1116360 at *3 (S.D.N.Y. Apr. 27, 2009) (quotation and citations omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  See Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

---

[1] Plaintiff does not allege race discrimination in her Amended Complaint or in her opposition to the instant motion and, thus, appears to have abandoned said claim.

## II. DISABILITY DISCRIMINATION

Although plaintiff's Amended Complaint does not enumerate the specific federal right(s) at issue, the Court construes plaintiff's allegations (consistent with her original complaint) to assert a violation of the ADA.  Defendants argue that plaintiff's ADA claim is barred by the Eleventh Amendment.  "The Eleventh Amendment, through the doctrine of sovereign immunity, bars suits in federal court against a state absent a waiver of immunity or congressional legislation specifically overriding immunity."  Robinson v. Fisher, No. 09 Civ. 8882, 2010 WL 5376204 at *6 (S.D.N.Y. Dec. 29, 2010).  The Supreme Court has held that Congress did not validly abrogate state sovereign immunity from suit brought pursuant to Title I of the ADA.  See Board of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 368-74 (2001).  Further, "[f]or Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity."  See Sherman v. New York State Banking Dep't, No. 09 Civ. 2476, 2010 WL 997378 at *5 (S.D.N.Y. Mar. 19, 2010) (quotation and citation omitted).  Here, NYS DOCS is an "arm of the state" and is therefore immune from suit by private individuals for money damages under Title I of the ADA.  See Redman v. New York State Dep't. of Corr. Servs., No. 10 CV 5368, 2011 WL 5119574 at *2 (S.D.N.Y. Oct. 12, 2011) ("DOCS is a State agency.  Thus, plaintiff cannot bring an ADA claim against this defendant, and her claim must be dismissed."); Pierre v. New York State Dep't. of Corr. Servs., No. 05 Civ. 0275, 2009 WL 1583475 at *17 (S.D.N.Y. Jun. 1, 2009) (Eleventh Amendment barred ADA Title I claims against NYS DOCS).  Accordingly, I conclude, and respectfully recommend, that defendants' motion to dismiss plaintiff's ADA claim should be granted.

3

## III. PENDANT STATE CLAIM

To the extent that plaintiff's Amended Complaint can be construed as asserting a claim for disability discrimination under the HRL, I respectfully recommend that said claim should also be dismissed.  "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."  Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d. Cir. 1998) (citations omitted). Accordingly, given my recommendation that plaintiff's federal claim be dismissed, and with due consideration to concerns of judicial economy, efficiency, convenience and fairness, I conclude, and respectfully recommend, that plaintiff's HRL claim should be dismissed.[2]

## IV. CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend, that defendants' motion to dismiss should be granted and plaintiff's Amended Complaint should be dismissed in its entirety.[3]

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon

---

[2] In any event, for the reasons stated in the undersigned's Report and Recommendation dated March 4, 2011, this Court lacks subject matter jurisdiction over the state discrimination claim.

[3] Attached to this Report and Recommendation are copies of all unpublished opinions and decisions available only in electronic form cited herein.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

4

the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kimba M. Wood, United States District Court, Southern District of New York, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned at 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Kimba M. Wood and not to the undersigned.

Dated: February 23, 2012
      White Plains, New York

Respectfully Submitted:

_____
GEORGE A. YANTHIS, U.S.M.J.

5

Westlaw

Slip Copy, 2009 WL 1116360 (S.D.N.Y.)
**(Cite as: 2009 WL 1116360 (S.D.N.Y.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Alson ALSTON, Plaintiff,
v.
MICROSOFT CORPORATION et al., Defendants.

No. 08 Civ. 3547(DC).
April 27, 2009.

West KeySummary**Civil Rights 78 ⬅⬅1505(3)**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1503 Administrative Agencies and Proceedings
            78k1505 Time for Proceedings; Limitations
                78k1505(3) k. Operation; Accrual and Computation. Most Cited Cases
    Employee's allegations of discrete acts that created a hostile work environment were time barred, and therefore employee's race and disability discrimination claims against employee were dismissed. Except for employee's employment termination, all of the alleged discriminatory acts occurred before the 300-day time restriction. Civil Rights Act of 1964, § 706(e), 42 U.S.C.A. § 2000e-5(e); Americans with Disabilities Act of 1990, § 107(a), 42 U.S.C.A. § 12117(a).

Alson Alston, Philadelphia, PA, pro se.

K & L Gates LLP, by: Rosemary Alito, Esq., George P. Barbutsuly, Esq., Newark, NJ, for Defendant Microsoft Corporation.

**_MEMORANDUM DECISION_**
CHIN, District Judge.
    *1 _Pro Se_ plaintiff Alson Alston brings this employment discrimination action against defend-ants Microsoft Corporation ("Microsoft") and ten individual employees of Microsoft. Alston alleges race and disability discrimination in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 _et seq._ (the "City HRL"), the New York State Human Rights Law, Executive Law § 290 _et seq._ (the "State HRL"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e _et seq._ ("Title VII"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 _et seq._ (the "ADA").

    Microsoft moves to dismiss the City and State HRL claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Microsoft argues that these claims are barred because Alston elected his city law administrative remedies. Microsoft also moves to dismiss Alston's Title VII and ADA claims-except Alston's wrongful termination claim-for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[FN1]

        FN1. Alston has requested sanctions against Microsoft for misrepresenting the current state of his appeal with the New York City Commission on Human Rights. (Pl.Aff. Pt. II, p. 5). The request is denied.

    For the reasons set forth below, Microsoft's motion to partially dismiss is granted.

**_BACKGROUND_**
**A. _Facts_**
    For purposes of this motion, the facts alleged in the complaint are assumed to be true.

**1. _Employment Overview_**
    From 1995 to 1999, Alston worked as a Development Lead Programmer for Microsoft Consulting Services ("MCS") in Washington, D.C. (Compl.Ex. 1, ¶¶ 5, 9). He was transferred to Microsoft's Financial Services practice ("FinServ") in New York City in 1999 and worked there until his employ-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1116360 (S.D.N.Y.)
**(Cite as: 2009 WL 1116360 (S.D.N.Y.))**

ment was terminated in 2004. (*Id* . Pt. II, p. 1). MCS and FinServ are divisions of Microsoft.

## 2. *Racial Discrimination*

Alston is an African-American male. He alleges that Microsoft "created a hostile work environment for its African-American employees." (*Id.* at 4).

While employed at MCS, Alston's software designs were published and he received a good performance rating. (*Id.*). Despite this good performance review Alston was not granted any stock options even though similarly situated white employees received stock options. (*Id.*).

The pattern of racial discrimination continued at FinServ. (*Id* . at 4-5). An African American manager told Alston that he wanted to eliminate Alston as competition and destroy his career. (*Id.* at 4). In late 2000 while Alston was on vacation, this manager e-mailed him an assignment knowing that Alston would not get the email in time to adequately complete the assignment. (*Id.* at 5). Another manager at FinServ referred to Alston as a "slum lord." (*Id.*). According to Alston, "[t]his was a racially charged statement because [he] clearly assumed that plaintiff must have lived in or could invest only in a 'slum' or ghetto." (*Id.*). In addition, a third manager used racially insensitive terms in 2001. ( *Id.*).

*2 Alston was "consistently passed over for promotions in favor of less qualified whites." (*Id.*). He complained of racial discrimination but his complaints were ignored and he was retaliated against for making them. (*Id.*).

## 3. *Disability Discrimination*

Alston suffers from diabetes, hypertension, and adjustment disorder. (Compl.Pt. I, p. 3). He states that "Microsoft engaged in a pattern of unlawful employment practices regarding [his] disabilities." ( *Id.* at 1).

Alston requested medical leave in February

1999, but was denied. (*Id.* Pt. II, p. 1). He was fired in February 1999 as a direct result of his request for leave. (*Id.*). Alston then threatened a discrimination suit, which caused Microsoft to reinstate him. (*Id.*).

In July 1999, following his reinstatement, Alston was denied promotions, salary increases, and bonuses. (*Id.*). Also in retaliation, Microsoft deleted his name from an article he published, which limited and hindered his career. (*Id.*). While "similarly situated white developers had always been quickly promoted and given the best assignments ... [Alston] was given few accolades and not promoted." (*Id.*).

The disability discrimination continued at FinServ. (*Id.*). Alston suffered an undefined illness as a result of a heavy workload. His symptoms included "increased anxiety, exhaustion, difficulty concentrating, rapidly rising blood pressure readings and elevated blood sugar readings." (*Id.*). He was forced to take sick leave from April 15, 2003 to September 15, 2003. (*Id.*).

Prior to his September 15, 2003 return, Alston requested various accommodations, including a 40-hour work week (inclusive of travel time), a gradual increase in his work load, adequate time to retool his technical skills, and an opportunity to complete his two performance reviews. (*Id.* Ex. 1, 13). Microsoft agreed to the 40-hour work week and removed Alston from work assignments that required high-profile presentations. (*Id.* at 14). Microsoft also promised to postpone Alston's mid-year review, but failed to live up to the promise. (*Id.* at 17).

Microsoft management retaliated against him by refusing to grant vacation time, increasing his work schedule without giving him time to retool his technical skills, and placing him individually on assignments that required more than one employee to complete. (*Id* . Pt. II, p. 2). Alston made numerous complaints to Human Resources, but Microsoft did nothing. (*Id.*). Alston alleges that "for four weeks ... management team personnel ... retaliated against

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1116360 (S.D.N.Y.)
**(Cite as: 2009 WL 1116360 (S.D.N.Y.))**

[Alston] until he was forced to return to sick leave" in October 2003. (*Id.*).

**4. *Alston's Dismissal***

Alston did not return to work after October 2003. Microsoft reached out to him via letter addressed to his New York home. (Barbatsuly Decl. Ex. A.). The letter gave Alston three options regarding his employment. (*Id.*). Alston had to either: (1) submit a medical release and return to work; (2) attend two independent medical examinations if Alston or his healthcare provider felt he was medically unable to work; or (3) resign. (*Id*.). He was to respond with his preferred course of action by April 12, 2004. (*Id.*).

*3 The letter was delivered via Airborne Express on April 2, 2004 and signed for by Y. Alston, Alston's sister. (*Id.*). Alston alleges that he lived in Pennsylvania at the time the letter was sent and thus did not receive it in time to respond. (Compl.Pt. II, p. 2). He contends that Microsoft intentionally sent the letter to his New York address when Microsoft knew he had moved to Pennsylvania and had his new address. (*Id.* at 3). Alston adds, "Microsoft utilized a pretense to terminate plaintiff [that] demonstrates a level of contempt for an employee on disability leave ." (*Id.*).

When it did not receive a response by April 12, 2004, Microsoft attempted to contact Alston by e-mail and telephone. (Barbatsuly Decl. Ex. A.). Alston contends that he did not receive the e-mails in time to respond. (*Id.* Ex. E.). Microsoft received no response by April 14, 2004. (*Id.* Ex. A.). On April 15, 2004, Microsoft terminated Alston's employment. (*Id.*).

**B. *Procedural History***

**1. *Administrative Hearings***

Alston alleges that he filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on December 20, 2004. (Compl., Pt. I, p. 3). On February 2, 2005, he filed a claim with the New York City Commission on Human Rights (the "Commission") "authoriz[ing] [the Commission] to accept [the] verified complaint on behalf of the [EEOC]." (*Id.,* Ex. 1). On November 15, 2007, the Commission issued a Determination and Order After Investigation dismissing Alston's complaint in its entirety. (Barbatsuly Decl. Ex. D.). On November 29, 2007, Alston requested that the Commission vacate its Determination so he could pursue the matter further through the EEOC. (*Id.,* Ex. E.). The Commission has not yet completed its review of Alston's appeal. (Pl.Aff., Pt. II, p. 4). Meanwhile, on January 14, 2008, Alston received an EEOC Dismissal and Notice of Rights. (Compl., Ex. 2).

**2. *This Suit***

Alston commenced this action on April 9, 2008. He alleges race and disability discrimination, wrongful termination based on race and disability, retaliation, and a hostile work environment, in violation of the City HRL, the State HRL, Title VII, and the ADA. Microsoft seeks dismissal of Alston's City HRL and State HRL claims and certain of his Title VII and ADA claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**DISCUSSION**

**A. *Motion to Dismiss the City HRL and State HRL Claims***

**1. *12(b)(1) Standard***

In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), courts "need not accept as true contested jurisdictional allegations." *Jarvis v. Cardillo,* No. 98 Civ. 5793(RWS), 1999 WL 187205, at *2 (S.D.N.Y. Apr.6, 1999). Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings, such as affidavits. *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000); *Filetech S.A. v. France Telecom S.A.,* 157 F.3d 922, 932 (2d Cir.1998).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1116360 (S.D.N.Y.)
**(Cite as: 2009 WL 1116360 (S.D.N.Y.))**

*4 As the party "seeking to invoke the subject matter jurisdiction of the district court," *Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996), the plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in the case, *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). Though "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," *Guadagno v. Wallack Ader Levithan Assocs.,* 932 F.Supp. 94, 95 (S.D.N.Y.1996), a court should " 'constru[e] all ambiguities and draw[ ] all inferences' in a plaintiff's favor." *Aurecchione,* 426 F.3d at 638 (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)).

In addition, "[d]efects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings." *Fox v. Board of Tr. of the State Univ. of New York,* 42 F.3d 135, 140 (2d Cir.1994), *cert. denied,* 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995); *see also* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

## 2. City and State HRL

Section 297(9) of the State HRL provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction." N.Y. Exec. Law § 297(9). " 'The language of the [City HRL] is nearly identical to that of [the State HRL],' and discussion of the latter applies equally to the former." *York v. Ass'n of the Bar of City of New York ("York II"),* 286 F.3d 122, 127 (2d Cir.2002) (quoting and affirming *York v. Ass'n of the Bar of City of New York ("York I"),* No. 00 Civ. 5961(DC), 2001 WL 776944, at *5 (S.D.N.Y. July 11, 2001)).

Both laws contain an "election of remedies" provision "that bars 'a person who has filed a complaint ... with any local commission on human rights' from filing a lawsuit for the same cause of

action." *York I,* 2001 WL 776944, at *14 (quoting N.Y. Exec. Law § 297(9)); *see* N.Y.C. Admin. Code § 8-502(a); *Whidbee v. Garzarelli Food Specialties,* 223 F.3d 62, 75 (2d Cir.2000); *Vails v. Police Dep't of the City of New York,* 54 F.Supp.2d 367, 375 (S.D.N.Y.1999). Once City HRL or State HRL claims are filed with, respectively, the Commission or the N.Y.S. Division of Human Rights (the "Division"), those claims or claims based on the same incidents may not be brought again in another court. *See York II,* 286 F.3d at 127; *see also Moodie v. Fed. Reserve Bank of New York,* 58 F.3d 879, 882 (1995).

There are two exceptions to the election of remedies doctrine: (1) a complaint filed with the Commission or Division dismissed for administrative convenience, N.Y. Exec. Law § 297(9); *Whidbee,* 223 F.3d at 75; *Pugh v. Mem'l Sloan Kettering Cancer Ctr.,* No. 97 Civ. 8594(DAB), 1998 WL 158764 (S.D.N.Y. April 6, 1998); and (2) a complaint filed with the Commission or Division by the EEOC pursuant to the Title VII requirement that all complaints filed directly with the EEOC be referred to the local agency (for duty-sharing purposes). *See* N.Y. Exec. Law § 297(9) (citing 42 U.S.C. § 2000e-5(c)); *see also Morelli v. Cedel,* No. 96 Civ. 2874(MBM), 1997 WL 61499, at *7 (S.D.N.Y. Feb.13, 1997), *vacated in part on other grounds,* 141 F.3d 39 (2d Cir.1998). When a plaintiff files a complaint with the Commission or Division, no City or State HRL claims arising from the same facts can be adjudicated in federal court, unless one of the exceptions applies. *Smith v. City of New York,* No. 03 Civ. 1252(NRB), 2008 WL 1970316, at *9 (S.D.N.Y. May 6, 2008); *see McNulty v. New York City State Dep't of Fin.,* 45 F.Supp.2d 296, 303 (S.D.N.Y.1999) (holding that plaintiff is foreclosed from bringing City or State HRL claims in federal court after electing to pursue a claim with the Division).

## 3. Application

*5 Microsoft argues that Alston's election of administrative remedies bars his City and State

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1116360 (S.D.N.Y.)
**(Cite as: 2009 WL 1116360 (S.D.N.Y.))**

HRL claims in this Court. For the reasons below, I agree.

The administrative remedies provided by N.Y. Exec. Law § 297(9) and the remedies available in this Court are mutually exclusive. Once a claimant elects the administrative forum by filing a complaint with the Commission on Human Rights, that becomes the sole avenue of relief. Subsequent judicial action arising from the same complaint or based on the same incident or cause of action is barred, unless one of the two exceptions applies.

While it is clear that the first exception does not apply to this case, whether the case falls under the second exception is less clear. Alston asserts in conclusory fashion that he filed with the EEOC on December 20, 2004 and also on February 2, 2005. (Compl., Pt. I, p. 3). He has not provided a copy of what he purportedly filed with the EEOC. The only EEOC document in the record is the Dismissal and Notice of Rights, which actually bears a 2005 docket number, 16F-2005-00045. (*Id.*, Ex. 2). The docket number suggests Alston's charge was filed in 2005, not in 2004.

The Court concludes that Alston filed with the Commission first for several reasons. First, in his verified complaint filed with the Commission, Alston authorizes the Commission to accept the verified complaint on behalf of the EEOC. His authorization suggests that he filed with the Commission first, asking it to accept the charge for the EEOC, as well. Second, in his Opposition, Alston does not allege that he filed with the EEOC first. To the contrary, he suggests he filed with the Commission and then filed with the EEOC "even though the [Commission] matter was still on appeal." (Pl.Aff., Pt. I, p. 5). Third, Microsoft contends it is "unaware of any direct EEOC filing by Plaintiff on either [December 20, 2004 or February 2, 2005]." (Def.Mem., p. 5). Fourth, the EEOC Dismissal and Notice of Rights bears a 2005 docket number. Accordingly, based on all of the documentation, the Court finds that Alston filed with the Commission first and the Commission accepted his complaint

for itself and the EEOC. Under these circumstances, the case does not fall under the second exception.

Thus, the City and State HRL claims are dismissed for lack of subject matter jurisdiction.

**B. *Motion to Dismiss Title VII and ADA Claims In Part***

**1. *12(b)(6) Standard***

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The Court may only consider the allegations in the complaint and any documents either attached as exhibits to the complaint or incorporated into the complaint by reference. *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004).

**\*6** To survive a motion to dismiss, a plaintiff's claim must be "plausible." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007); *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007). Under the plausibility standard, a district court's inquiry focuses on whether the complaint pleads " 'enough facts to state a claim for relief that is plausible on its face.' " *Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir.2007) (quoting *Bell Atl. Corp.,* 127 S.Ct. at 1974).

Furthermore, "a defendant may raise the affirmative defense in a pre-answer motion to dismiss" when a statute of limitations bars an action based on the dates in a complaint. *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir.1989). "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." (*Id.*).

**2. *Title VII and ADA Time Restrictions***
In New York State, Title VII and the ADA require a plaintiff to file an administrative charge of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1116360 (S.D.N.Y.)
**(Cite as: 2009 WL 1116360 (S.D.N.Y.))**

discrimination with the EEOC no more than 300 days after the alleged discriminatory act to maintain an action in federal court. 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

**3. Discrete Acts and Hostile Work Environment**

Title VII and ADA time restrictions apply to each discrete act of alleged discrimination. Discrete acts of discrimination include "termination, failure to promote, denial of transfer, or refusal to hire," as well as disciplinary actions such as suspensions and the denial of training." *Morgan,* 536 U.S. at 114. In *Morgan,* the Supreme Court held that "[d]iscrete discriminatory acts are not actionable if time barred." *Id.*

Title VII and ADA time restrictions also apply to hostile work environment claims. A hostile work environment is "comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.' " *Id.* at 117. At least one act contributing to the alleged hostile work environment must fall within the limitations period. *Id.* Title VII claims not raised previously, however, must be reasonably related to the original claims made with the EEOC. *See Butts v. City of New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401, 1402-03 (2d Cir.1993) (noting that "this exhaustion requirement is an essential element of Title VII's statutory scheme").

The Court must look at all the circumstances to determine whether a hostile or abusive work environment exists.

These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.... [N]o single factor is required.

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Further-

more, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris,* 510 U.S. at 21.

**4. Application**

\*7 Alston alleges that he suffered discrimination based on race and disability while employed at Microsoft and that this discrimination created a hostile work environment. Microsoft argues that the claims should be dismissed because they are time-barred. I conclude that all of the alleged discrete acts except for Alston's discharge are time-barred. I also conclude that Alston's discharge is a discrete act and cannot be considered, in the circumstances here, part of the hostile work environment claim.

**a. Alston's Time Restrictions**

Alston states that he first filed his administrative charge of discrimination on December 20, 2004. (Compl. Pt I, p. 3). Accordingly, even assuming that date is correct, the limitations period commenced 300 days earlier, on February 24, 2004. 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a). Allegations of discrete acts that occurred before February 24, 2004 are time-barred. *See Morgan,* 536 U.S. at 114. Hostile work environment claims, however, because of their continuous nature, are not time-barred as long as one act occurs within the 300 days between February 24 and December 20, 2004. *Id.* at 117.

**b. Discrete Acts**

Alston admits that he was the victim of what "appear to be discrete, independent events" from 1999 to 2004. (Compl., Pt. II, p. 2). Discrete acts include failure to promote, denial of transfer, and termination of employment. *See Morgan,* 536 U.S. at 114. Because the 300-day time restriction applies to each discrete act, I cannot consider any discrete discriminatory acts that took place before February 24, 2004. *Id.* Except for Alston's employment termination, all of the alleged discriminatory acts occurred prior to February 24, 2004. Accordingly, the earlier discrete acts are time-barred.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1116360 (S.D.N.Y.)
(Cite as: 2009 WL 1116360 (S.D.N.Y.))

**c. Hostile Work Environment**

Alston also contends that the same discrete acts "clearly paint a picture of a hostile work environment" that continued from 1999 to 2004. (Compl., Pt. II, p. 6). If Alston's employment termination could be considered part of a series of continuous acts comprising a hostile work environment, then the alleged acts dating back to 1999 would not be time-barred. *See Morgan,* 536 U.S. at 114. There is a lack of continuity, however, between the alleged acts of hostility at work and the termination of his employment. Alston had been on leave for many months when Microsoft terminated his employment. In addition, Alston's complaint fails to identify any "alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of his employment." *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding that employee could not use termination that fell within the limitations period to pull in time-barred discriminatory act). Thus, Alston's hostile work environment claim is time-barred.

Accordingly, defendant's motion to partially dismiss Alston's Title VII and ADA claims is granted.

### CONCLUSION

*8 For the foregoing reasons, Microsoft's motion to partially dismiss is granted. Alston's wrongful termination claim survives, but only as to Microsoft.[FN2] All discovery-fact and expert-shall be completed by August 14, 2009. Any party wishing to move for summary judgment must do so by September 18, 2009. Opposition papers shall be filed by October 16, 2009. Reply papers shall be filed by October 30, 2009.

> FN2. The claims against the individual defendants are dismissed. The City and State HRL claims are dismissed due to Alston's election of remedies. The Title VII and ADA claims against the individual defendants are dismissed because "individuals are not subject to liability under Title VII" or

the ADA. *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000) (per curiam) (citing *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). The complaint is dismissed as to the following defendants: Albert Kim, Teresa Ulus, Jim Cox, Walter Patrick, Bob Tedesco, Dennie Beach, Nancy Horwitz, Jeffrey Moore, Paul Nasto, and Allison Watson.

SO ORDERED.

S.D.N.Y.,2009.
Alston v. Microsoft Corp.
Slip Copy, 2009 WL 1116360 (S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Stephen ROBINSON, Plaintiff,
v.
Brian FISCHER, et al., Defendants.

No. 09 Civ. 8882(LAK)(AJP).
Dec. 29, 2010.

### REPORT AND RECOMMENDATION

ANDREW J. PECK, United States Magistrate Judge.
   *1 To the Honorable Lewis A. Kaplan, United States District Judge:

   Plaintiff Stephen Robinson brings this § 1983 action against defendants New York State Department of Corrections ("DOCS"), New York State Division of Parole ("DOP"), DOCS Commissioner Brian Fischer, and Parole Officers Lisa Duquesnay and Barry Davis (collectively the "State Defendants").[FN1] (Dkt. No. 21: 2d Am. Compl.) [FN2] Robinson alleges that the State Defendants violated his Fourth, Eighth and Fourteenth Amendment rights by (1) administratively imposing and enforcing a term of Post-Release Supervision ("PRS" or "parole") following the expiration of his lawful prison sentence (2d Am.Compl.¶¶ 14-16, 20-22, 29-30, 37-41), and (2) informing the New York State Attorney General, pursuant to New York Mental Hygiene Law § 10.06, that he was a " 'detained sex offender nearing release,' " thereby subjecting him to "an additional and unnecessary period of incarceration" (2d Am. Compl. ¶¶ 42-43; Dkt. No. 45: Robinson Br. at 9). Robinson also asserts state law claims against Parole Officers Duquesnay and Davis for intentional infliction of emotional distress (2d Am.Compl.¶¶ 50-53), and against DOCS, DOP and Commissioner Fischer for "negligently hiring, training, screening, supervising and/or instructing" Parole Officers Duquesnay and

Davis (2d Am.Compl.¶¶ 48-49, 54-55).

   FN1. Robinson voluntarily dismissed his claims against the City Defendants. (Dkt. No. 47: Order of Voluntary Dismissal.)

   FN2. Robinson brought his original complaint pro se. (Dkt. No. 2: Compl.) Subsequently, attorney Victor Brown agreed to represent Robinson on a pro bono basis. (Dkt. No. 16: Notice of Appearance.) The Court expresses appreciation to Mr. Brown for doing so.

   Presently before the Court is the State Defendants' summary judgment motion. (Dkt. No. 36: Notice of Motion; Dkt. No. 43: Am. Notice of Motion.) For the reasons set forth below, the State Defendants' summary judgment motion should be *GRANTED.*

### FACTS

   On May 4, 2000, Robinson pled guilty before Justice Barbara F. Newman in Supreme Court, Bronx County, to first degree sexual abuse (P.L. § 130.65). (Dkt. No. 21: 2d Am. Compl. ¶ 13; Dkt. No. 38: Defs. Rule 56.1 Stmt. ¶¶ 4, 7; Dkt. No. 46: Robinson Opp. Rule 56.1 Stmt. ¶¶ 4, 7.) On May 18, 2000, Justice Newman sentenced Robinson to six years imprisonment. (2d Am. Compl. ¶ 13; Defs. Rule 56.1 Stmt. & Robinson Opp. ¶ 7.) Justice Newman did not impose PRS as part of Robinson's sentence. (2d Am. Compl. ¶ 6; Defs. Rule 56.1 Stmt. & Robinson Opp. ¶ 8; see Dkt. No. 39: Keane Aff. Ex. B: 5/18/00 Sentencing Tr.; Keane Aff. Ex. C: Robinson Sentence & Commitment Sheet.)

   Following his release from custody on July 8, 2005, however, DOCS imposed on Robinson a five year PRS term.[FN3] (2d Am. Compl. ¶ 13; Defs. Rule 56.1 Stmt. & Robinson Opp. ¶¶ 5-6; see Dkt. No. 40: Duquesnay Aff. Ex. C: Cert. of Release to Parole Supervision.) As a condition of PRS, Robin-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

son was required, *inter alia,* to submit to searches of his "person, residence and property." (2d Am. Compl. ¶ 13; Defs. Rule 56.1 Stmt. & Robinson Opp. ¶ 10; Cert. of Release to Parole Supervision ¶ 4.)

> FN3. At the time, Penal Law § 70.45 stated, in relevant part, that "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision." P.L. § 70.45 (as enacted Aug. 6, 1998). DOCS interpreted that statute as "mandat[ing] a period of PRS as part of every determinate sentence," regardless of whether it was pronounced in court by the sentencing judge. (Defs. Rule 56.1 Stmt. ¶¶ 5-6; Dkt. No. 37; Defs. Br. at 2; Keane Aff. Ex. H: Annucci Aff. ¶¶ 5-13.)

On March 20, 2006, Robinson was arrested for first degree sexual assault but was not charged. (Defs. Rule 56.1 Stmt. ¶ 13 & Robinson Opp. ¶ 11; *see* Duquesnay Aff. ¶ 10 & Ex. D: Violation of Release Report.) As a result of that arrest, DOP imposed additional conditions on Robinson's parole. (Defs. Rule 56.1 Stmt. ¶ 14 & Robinson Opp. ¶ 11; *see* Duquesnay Aff. Ex. A: Special Conditions of Release to Parole Supervision.) In particular, Robinson could not "purchase or possess pornographic or video equipment without the prior knowledge or permission of [his] Parole Officer," nor could he "purchase or engage, in any way, in the use of pornographic materials or erotic magazines, tapes, pictures or films." (Defs. Rule 56.1 Stmt. ¶ 15 & Robinson Opp. ¶ 11; Special Conditions of Release to Parole Supervision ¶¶ 11, 15.)

**\*2** During an April 7, 2006 visit to Robinson's home, Parole Officers Duquesnay and Davis "observed [Robinson] watching a sexually explicit DVD, in violation of the terms and conditions of his parole." [FN4] (Defs. Rule 56.1 Stmt. ¶ 17 & Robinson Opp. ¶ 12(a); Duquesnay Aff. ¶ 11; Violation of Release Report; Dkt. No. 41: Davis Aff. ¶¶ 7-8; Robinson Dep. at 78-82.) On April 19, 2006,

Robinson was issued a "Notice of Violation" and taken into custody.[FN5] (Defs. Rule 56.1 Stmt. ¶¶ 19-20 & Robinson Opp. ¶ 13; Duquesnay Aff. ¶¶ 12-13 & Ex. E: Notice of Violation; Robinson Dep. at 82.) Robinson was held at Rikers Island pending a final parole revocation hearing. (2d Am. Compl. ¶ 13; Robinson Dep. at 77.)

> FN4. The video contained "a scene at a bar or similar establishment where five or six nude women performed dances individually for individual men.... Another scene was of an officer being arrested after accepting oral sex (shown on the video although intentionally blurring the sexual organ.)" (Duquesnay Aff. Ex. F: Parole Revocation Decision Notice ¶ 1V(2); *see* Keane Aff. Ex. D: Robinson Dep. at 79-80.)

> FN5. Robinson was violated for (1) the March 20, 2006 arrest, (2) watching and/or possessing an erotic film and (3) possessing video equipment without permission of his Parole Officer. (*See* Violation of Release Report.) The charges relating to Robinson's March 20, 2006 arrest subsequently were withdrawn. (*See* Parole Revocation Decision Notice ¶ 1V(2).)

On June 20, 2006, Administrative Law Judge Michael Goldschmid conducted a parole revocation hearing at which Robinson, represented by counsel, pled not guilty. (Defs. Rule 56.1 Stmt. ¶¶ 23, 25, 29 & Robinson Opp. ¶¶ 13, 18; Parole Revocation Decision Notice ¶ 1V(1).) After hearing testimony from Duquesnay, Davis and Robinson, and upon viewing portions of the DVD Robinson was seen watching, ALJ Goldschmid concluded that Robinson possessed and used video equipment to "view material that involved sexual content." (Parole Revocation Decision Notice ¶¶ 1V(1); 2d Am. Compl. ¶ 13; Defs. Rule 56.1 Stmt. ¶¶ 24, 29 & Robinson Opp. ¶¶ 13, 18.) ALJ Goldschmid found that Robinson "violated the special conditions" of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

his PRS and recommended that he be incarcerated for an additional thirty-six months. (Parole Revocation Decision Notice ¶¶ IV(3), V, VI; 2d Am. Compl. ¶ 13; Defs. Rule 56.1 Stmt. ¶ 30 & Robinson Opp. ¶ 18.) Upon review, however, DOP ordered that Robinson be held until the "[m]aximum [e]xpiration [d]ate of [his] [s]entence," July 7, 2010. (Parole Revocation Decision Notice ¶ VI; *see* Cert. of Release to Parole Supervision; Special Conditions of Release to Parole Supervision; Violation of Release Report.) Robinson was returned to DOCS custody to serve the remainder of his sentence. (2d Am. Compl. ¶ 13; Robinson Dep. at 65-66.)

On April 29, 2008, the New York Court of Appeals decided *People v. Sparber,* 10 N.Y.3d 457, 859 N.Y.S.2d 582, 889 N.E.2d 459 (2008), and *Garner v. N.Y.S. Dep't of Corr. Servs.,* 10 N.Y.3d 358, 859 N.Y.S.2d 590, 889 N.E.2d 467 (2008), invalidating administrative imposition of PRS. *See Garner v. N.Y.S. Dep't of Corr. Servs.,* 10 N.Y.3d at 362, 859 N.Y.S.2d at 592, 889 N.E.2d 467 ("As we explained today in *People v. Sparber* ..., the sentencing judge-and only the sentencing judge-is authorized to pronounce the PRS component of a defendant's sentence."). Thereafter, the State Legislature created a statutory framework to resentence inmates who were improperly given an administratively imposed term of PRS. *See* N.Y. Corr. Law § 601-d (effective June 30, 2008).

On May 28, 2008, after identifying Robinson as "an individual with a potentially flawed PRS Term," DOCS Deputy Commissioner Anthony J. Annucci referred Robinson to Justice Newman "for possible resentencing." (Defs. Rule 56.1 Stmt. ¶ 45 & Robinson Opp. ¶ 22; *see* 2d Am. Compl. ¶ 13; Keane Aff. Ex. N: 8/7/08 Justice Newman Decision at 3.) In June 2008, Robinson moved in state court for a writ of habeas corpus "vacating the five year-period of PRS and ... directing [his] release from [ ] custody ...." (Defs. Rule 56.1 Stmt. ¶ 36 & Robinson Opp. ¶ 19; *see* 2d Am. Compl. ¶ 13; Keane Aff. Ex. F: Robinson State Habeas Petition.)

*\*3* On July 29, 2008, Justice Newman granted Robinson's petition. (2d Am. Compl. ¶ 13; Defs. Rule 56.1 Stmt. ¶ 47 & Robinson Opp. ¶ 23; 8/7/08 Justice Newman Decision.) Because the sentencing court failed to pronounce a term of PRS and DOCS had "no authority" to administratively impose such a term, Justice Newman reasoned, "the putative period of PRS to which DOCS unlawfully compelled petitioner to submit in exchange for his release from incarceration was a nullity ab initio." (8/7/08 Justice Newman Decision at 4.) Accordingly, Justice Newman ordered Robinson to be released "forthwith." (8/7/08 Justice Newman Decision at 6; Robinson Opp. Rule 56.1 Stmt. ¶ 23; 2d Am. Compl. ¶ 13.)

Also on July 29, 2008, DOCS notified the Attorney General, pursuant to Mental Hygiene Law § 10.05,[FN6] that Robinson "could be deemed a 'detained sex offender nearing release.' " (Defs. Rule 56.1 Stmt. ¶ 49 & Robinson Opp. ¶ 23.) Because Robinson was to be released before a "case review team" could determine whether he was "a sex offender requiring civil management," M.H.L. § 10.06, the State moved for a securing order directing DOCS to maintain custody of Robinson until the State had an opportunity to evaluate his status under the Mental Hygiene Law. (Defs. Rule 56.1 Stmt. ¶ 50 & Robinson Opp. ¶ 24.) The securing order was granted (Defs. Rule 56.1 Stmt. ¶ 50 & Robinson Opp. ¶ 24) and on August 6, 2008, the State filed a Petition for Civil Management seeking Robinson's continued confinement in a "secure treatment facility." M.H.L. § 10.06(k). (*See* 2d Am. Compl. ¶ 13; Keane Aff. Ex. O: 10/15/08 Justice Gross Order at 1, 3; Defs. Rule 56.1 Stmt. ¶ 52 & Robinson Opp. ¶ 26.)

> FN6. That statute states, in relevant part, that "[w]hen it appears to an agency with jurisdiction, other than the division of parole, that a person who may be a detained sex offender is nearing an anticipated release, the agency shall give notice of that fact to the attorney general and to the com-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

missioner of mental health." M.H.L. § 10.05(b). If, upon review, the case review panel "finds that a respondent is a sex offender requiring civil management, then the attorney general may file a sex offender civil management petition in the supreme court or county court of the county where the respondent is located." M.H.L. § 10.06(a).

On September 15, 2008, the Bronx County District Attorney's Office declined to have Robinson re-sentenced pursuant to Corrections Law § 601-d. (Defs. Rule 56.1 Stmt. ¶ 47 & Robinson Opp. ¶ 23.) On September 16, 2008, Robinson moved for dismissal of the State's Petition for Civil Management. (Defs. Rule 56.1 Stmt. ¶ 52 & Robinson Opp. ¶ 26; 10/15/08 Justice Gross Order at 1, 3.) By Order dated October 15, 2008, Justice Michael A. Gross, Supreme Court, Bronx County, dismissed the State's Civil Management Petition. (10/15/08 Justice Gross Order; 2d Am. Compl. ¶ 13; Defs. Rule 56.1 Stmt. ¶ 52 & Robinson Opp. ¶ 26.) According to Justice Gross, because "DOCS had no authority to impose post-release supervision, [Robinson] was not 'currently serving a sentence,' " and therefore was not a " 'detained sex offender' within the meaning of MHL § 10.03(g)(1)." (10/15/08 Justice Gross Order at 8, 12.)

Robinson was released from DOCS custody on October 21, 2008. (Defs. Rule 56.1 Stmt. ¶ 53 & Robinson Opp. ¶ 26; Keane Aff. Ex. A: DOCS Inmate Locator at 1.)

## ANALYSIS
### I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary "judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Lang v. Ret. Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991).

*\*4 The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587, 106 S.Ct. at 1356; *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (At summary judgment, "[t]he time has come ... 'to put up or shut up.' ") (citations omitted), *cert. denied,* 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513.[FN7] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

(1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d at 37.

> FN7. *See also, e.g., Feingold v. N.Y.,* 366 F.3d 138, 148 (2d Cir.2004); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d at 36; *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d at 1223.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,][f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510 (citations omitted); *see also, e.g., Knight v. U.S. Fire Ins. Co.,* 804 F.2d at 11-12.

## II. *ROBINSON'S SECTION 1983 CLAIMS SHOULD BE DISMISSED*

### A. *Robinson's Section 1983 Claims Are Not Time Barred*

**\*5** The statute of limitations for a § 1983 action is three years. *See, e.g., Palmer v. Stuart,* 274 F. App'x 58, 58 (2d Cir.2008); *McKithen v. Brown,* 481 F.3d 89, 100 n. 12 (2d Cir.2007), *cert. denied,* 552 U.S. 1179, 128 S.Ct. 1218, 170 L.Ed.2d 59 (2008); *Cioce v. Cnty. of Westchester,* 211 F. App'x 18, 19 (2d Cir.2006); *Walker v. Jastremski,* 430

F.3d 560, 561 (2d Cir.2005), *cert. denied,* 547 U.S. 1101, 127 S.Ct. 1887 (2006); *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2005); *Warren v. Altieri,* 59 F. App'x 426, 427 (2d Cir.2003) (Plaintiff's " § 1983 action is governed by New York's three-year statute of limitations as set out in N.Y. C.P.L.R. § 214, the provision applicable to actions for personal injury."); *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002), *cert. denied,* 53 8 U.S. 922, 123 S.Ct. 1574 (2003); *Paige v. Police Dep't,* 264 F.3d 197, 199 n. 2 (2d Cir.2001); *Connolly v. McCall,* 254 F.3d 36, 40-41 (2d Cir.2001).[FN8]

> FN8. *Accord, e.g., Storman v. Klein,* 09 Civ. 0338, 2009 WL 1035964 at \*19 (S.D.N.Y. Apr.20, 2009) (Peck, M.J.); *Newton v. City of N.Y.,* 566 F.Supp.2d 256, 270 (S.D.N.Y.2008); *Dunn v. DuBois,* 08 Civ. 1846, 2008 WL 1816427 at \*1 (S.D.N.Y. Apr.21, 2008); *Espada v. Schneider,* 522 F.Supp.2d 544, 550 n. 7 (S.D.N.Y.2007); *Hill v. Melvin,* 05 Civ. 6645, 2006 WL 1749520 at \*5 (S.D.N.Y. June 27, 2006) (Peck, M.J.), *aff'd,* 323 F. App'x 61 (2d Cir.2009); *Denis v. N.Y.S. Dep't of Corr. Servs.,* 05 Civ. 4495, 2006 WL 217926 at \*11 (S.D.N.Y. Jan 30, 2006) (Peck, M.J.), *report & rec. adopted,* 2006 WL 406313 (S.D.N.Y. Feb.22, 2006) (Kaplan, D.J.); *Diallo v. Williams,* 04 Civ. 4556, 2006 WL 156158 at \*2 (S.D.N.Y. Jan.20, 2006); *Allan v. City of N.Y.,* 386 F.Supp.2d 542, 548 (S.D.N.Y.2005); *Mitchell v. Home,* 377 F.Supp.2d 361, 371 (S.D.N.Y.2005); *Dawkins v. Jones,* 03 Civ. 0068, 2005 WL 196537 at \*8 (S.D.N.Y. Jan.31, 2005) (Peck, M.J.).

"Federal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action." *Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997); *accord, e.g., Cantor Fitzgerald Inc. v. Lutnick,* 313 F.3d 704,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

710-11 (2d Cir.2002); *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994), *cert. denied,* 516 U.S. 808, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995). In general under federal law, "the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Covington v. City of N.Y.,* 171 F.3d 117, 121 (2d Cir.) (quotations omitted), *cert. denied,* 528 U.S. 946, 120 S.Ct. 363, 145 L.Ed.2d 284 (1999).[FN9] However, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck v. Humphrey,* 512 U.S. 477, 489-90, 114 S.Ct. 2364, 2374, 129 L.Ed.2d 383 (1994); *see, e.g., Cotto v. Pabon* 07 Civ. 7656, 2008 WL 4962986 at *5-6 (S.D.N.Y. Nov.20, 2008) (Peck, M.J.) (citing cases).

> FN9. *See also, e.g., Assegai v. Bloomfield Bd. of Educ.,* 165 F. App'x 932, 934 (2d Cir.2006); *Washington v. Cnty. of Rockland,* 373 F.3d 310, 317 (2d Cir.2004); *Ormiston v. Nelson,* 117 F.3d at 71; *Eagleston v. Guido,* 41 F.3d at 871; *Singleton v. City of N.Y.,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

State Defendants assert that Robinson's claims in this action are time-barred because Robinson knew, or should have known, about the five year PRS term by no later than his June 2006 parole revocation hearing (*see* page 4 above), but did not file his complaint until October 2009, four months too late. (*See* Dkt. No. 37: Defs. Br. at 12-13; Dkt. No. 48: Defs. Reply Br. at 7.) State Defendants' argument is without merit.

"Under *Heck,* the relevant inquiry is not when plaintiffs became aware of the administratively impose[d] PRS term, rather, the relevant inquiry is when the PRS sentence was 'invalidated.' " *Mosley v. Goord,* No. 08-CV-2010, 2010 WL 3189730 at *2 (E.D.N.Y. Aug. 10, 2010) (citing cases). Here, Robinson's illegal sentence was "invalidated" on July 29, 2008, when Justice Newman granted his

state habeas petition. (*See* page 6 above.) Because Robinson filed this action less than three years after Justice Newman invalidated his parole sentence, his § 1983 claims are not time barred. *See, e.g., Knowles v. Johnson,* 08 Civ. 4741, 2010 WL 1050973 at *3 (S.D.N.Y. Mar.23, 2010); *Santiago v. Fischer,* No. 09-CV-1383, 2009 WL 3852001 at *3 (E.D.N.Y. Nov. 18, 2009) (§ 1983 action challenging administratively imposed PRS accrued on date that plaintiff's state habeas petition was granted); *Scott v. Fischer,* 07 Civ. 11303, 2009 WL 928195 at *4 (S.D.N.Y. Mar.30, 2009) ("Plaintiff's PRS was not vacated until 2007.... Consequently, the statute of limitations did not start to run until 2007 and plaintiff's [§ 1983] claim is not time barred."), *aff'd,* 616 F.3d 100 (2d Cir.2010).

**B. Robinson's Claims Against the State Agencies (DOCS and DOP) are Barred by the Doctrine of Sovereign Immunity**

**\*6** The Eleventh Amendment, through the doctrine of sovereign immunity, bars suits in federal court against a state absent a waiver of immunity or congressional legislation specifically overriding immunity. *See, e.g., Bd. of Tr. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001); *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996); *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). "It is well-established that New York has not consented to § 1983 suits in federal court," *Mamot v. Bd. of Regents,* 367 F. App'x 191, 192 (2d Cir.2010) (citing *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir.1977)), and "that § 1983 was not intended to override a state's sovereign immunity," *Mamot v. Bd. of Regents,* 367 F. App'x at 192; *see Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993); *Quern v. Jordan,* 440 U.S. 332, 340-42, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

A state's Eleventh Amendment immunity also extends to state agencies. *See, e.g., Baker v. City of N.Y.,* 09 Civ. 10604, 2010 WL 4273269 at * 3 (S.D.N.Y. Oct.29, 2010) ("Plaintiff's claims against DOCS and [DOP] must be dismissed, because both are state agencies and the doctrine of sovereign immunity bars suits against them."); *Hardy v. City of N.Y.,* No. CV-09-0166, ---F.Supp.2d. ----, 2010 WL 3199676 at *30 (E.D.N.Y. Aug. 12, 2010) ("NYS DOCS, as an instrumentality of the state, is immune from suit under § 1983."); *Whitfield v. O'Connell,* 09 Civ.1925, 2010 WL 1010060 at *4 (S.D.N.Y. Mar.18, 2010) ("[B]ecause Section 1983 does not abrogate a state's sovereign immunity and the State of New York has not waived its immunity, claims against DOCS for both monetary and injunctive relief are barred under the Eleventh Amendment.") (citations omitted), *aff'd,* No. 10-1398-PR, 2010 WL 4705112 (2d Cir. Nov.22, 2010); *Adams v. N.Y.S. Educ. Dep't,* 08 Civ. 5996, 2010 WL 624020 at *20 (S.D.N.Y. Feb.23, 2010) (Peck, M.J.) ( & cases cited therein), *report & rec. adopted,* 705 F.Supp.2d 298 (S.D.N.Y.2010).

To the extent Robinson sued Commissioner Fischer in his official capacity, such claims also are barred by the doctrine of sovereign immunity. *See, e.g., Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citation omitted); *Huminski v. Corsones,* 396 F.3d 53, 70 (2d Cir.2005) ("[S]tate officials cannot be sued in their official capacities for retrospective relief under section 1983."); *Baker v. City of N.Y.,* 2010 WL 4273269 at *3 ("The doctrine [of soverign immunity] also bars all claims made against Defendant Brian Fischer in his official capacity as Commissioner of DOCS."); *Adams v. N.Y.S. Educ. Dep't,* 2010 WL 624020 at *20 & n. 10 (citing cases).

*7 Accordingly, Robinson's claims against

DOCS, DOP and Commissioner Fischer in his official capacity are barred by the doctrine of sovereign immunity and should be *DISMISSED.*

**C. Robinson's Fourth, Eighth and Fourteenth Amendment Claims Against the Individual Defendants are Barred by the Doctrine of Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).[FN10]

> FN10. *Accord, e.g., Scott v. Fischer,* 616 F.3d 100, 105 (2d Cir.2010); *Amore v. Novarro,* 624 F.3d 522, 530 (2d Cir.2010); *Kelsey v. Cnty. of Schoharie,* 567 F.3d 54, 60-61 (2d Cir.2009).

The availability of the qualified immunity defense turns on the " 'objective legal reasonableness' " of the allegedly unlawful official action " 'assessed in light of the legal rules that were 'clearly established' at the time it was taken.' " *Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818 (1999)).[FN11]

> FN11. *Accord, e.g., Pearson v. Callahan,* 129 S.Ct. at 822; *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) ("[Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.' "); *Kelsey v. Cnty. of Schoharie,* 567 F.3d at 61 ("In assessing an officer's eligibility for the [qualified immunity] shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

the officer[ ] possessed.' ") (quoting *Wilson v. Layne,* 526 U.S. at 615, 119 S.Ct. at 1700).

In determining whether a particular right is "clearly established" for qualified immunity purposes, the Second Circuit considers three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Higazy v. Templeton,* 505 F.3d 161, 169 (2d Cir.2007).[FN12]

> FN12. *Accord, e.g., Rivers v. Fischer,* No. 09-4532-CV, 2010 WL 3199675 at *1 (2d Cir. Aug.13, 2010); *Scott v. Fischer,* 616 F.3d at 105; *Dean v. Blumenthal,* 577 F.3d 60, 68 (2d Cir.2009), *cert. denied,* --- U.S. ----, 130 S.Ct. 2347, 176 L.Ed.2d 577 (2010); *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003).

"[T]he Supreme Court has expressly cautioned against framing the constitutional right at too broad a level of generality." *Redd v. Wright* 597 F.3d 532, 536 (2d Cir.2010) ("And we have interposed a 'reasonable specificity' requirement on defining the contours of a constitutional right for qualified immunity purposes."); *see, e.g., Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) ("This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition ...."); *Wilson v. Layne* 526 U.S. at 614-15, 119 S.Ct. at 1699 ("[W]hat 'clearly established' means in [the qualified immunity] context depends largely upon the level of generality at which the relevant 'legal rule' is to be identified.' "); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right."). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039.

**\*8** After the Second Circuit's June 2006 decision of *Earley v. Murray,* 451 F.3d 71 (2d Cir.2006) (finding it unconstitutional for DOCS to administratively impose a term of post-release supervision onto a prisoner's sentence where the sentencing judge did not specifically pronounce that penalty), *cert. denied,* 551 U.S. 1159, 127 S.Ct. 3014, 168 L.Ed.2d 752 (2007), there is no question that Robinson's constitutional rights were violated when DOCS administratively imposed a five year PRS term. But that does not end the inquiry: a right is not clearly established for the purposes of qualified immunity unless, "under preexisting law[,] a reasonable defendant official would have understood that his or her acts were unlawful." *Higazy v. Templeton,* 505 F.3d at 169; *see also* cases cited at page 14 n. 12 above.

In *Scott v. Fischer,* the Second Circuit recently held "that it was not clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause." *Scott v. Fischer,* 616 F.3d at 106-07; *accord, e.g., Rivers v. Fischer,* 2010 WL 3199675 at *1. Accordingly, to the extent Robinson now challenges the administrative imposition (on July 8, 2005) and enforcement of PRS (in March to June 2006) prior to *Earley,* defendants Fischer, Duquesnay and Davis are entitled to qualified immunity.

Moreover, in light of post-*Earley* New York Appellate Division decisions that continued to find the administrative imposition of PRS constitutional, *see, e.g., Garner v. N.Y.S. Dep't of Corr. Servs.,* 39 A.D.3d 1019, 831 N.Y.S.2d 923 (3d Dep't 2007); *People v. Thomas,* 35 A.D.3d 192, 826 N.Y.S.2d 36

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

(1st Dep't 2006), the Second Circuit (and every district court in the Circuit that has considered the issue) has found that the shield of qualified immunity continued to protect state officials until April 2008, when the New York Court of Appeals struck down the administrative imposition of PRS. *See Rivers v. Fischer,* 2010 WL 3199675 at *1 ("Given the ambiguity on the law between *Earley* and the time of Rivers's release [in August 2008], defendants-appellees are entitled to qualified immunity ...."); *Hardy v. Fischer,* 08 Civ. 2460, 2010 WL 4359229 at *3 (S.D.N.Y. Nov.3, 2010) ("[T]his Court now finds that the unlawfulness of administratively imposed PRS was not clearly established from the standpoint of a reasonable DOCS officer in the period after *Earley* and before the New York Court of Appeals' decisions in *Garner* and *Sparber.*" ); *Smith v. Paterson,* 08 Civ. 3313, 2010 WL 4359225 at *2 (S.D.N.Y. Nov.3, 2010) (same); *Baker v. City of N.Y.,* 09 Civ. 10604, 2010 WL 4273269 at *5 (S.D.N.Y. Oct.29, 2010) ("[Q]ualified immunity extends to Defendant [Parole Officer] Grant for Plaintiff's arrests in June and November 2007, because at that time, New York courts were still in staunch disagreement about whether administratively imposed PRS, and a 'reasonable defendant' may well not have understood from the unsettled law at the time that an arrest pursuant to administratively imposed PRS was unlawful."); *Joy v. New York,* No. 09-CV-841, 2010 WL 3909694 at *4 n. 2 (N.D.N.Y. Sept. 30, 2010) ("Considering the state courts' confusion over the law, it cannot be said that, during the relevant time period, any right that Plaintiff may have had was a clearly established one of which a reasonable person would have known."); *Williams v. Fischer,* No. 08-CV-4612, 2010 WL 3924688 at *5 (E.D.N.Y. Sept. 30, 2010) ("In light of the 'judicial confusion' to which the Second Circuit alluded in *Scott,* this court holds that during the period between *Earley* and the *Sparber/Garner* decisions, it was *not* clearly established that administrative imposition of PRS is unconstitutional."); *Hardy v. City of N.Y.,* No. CV-09-0166, --- F.Supp.2d ----, 2010 WL 3199676 at *27 (E.D.N.Y. Aug. 12, 2010) (The " 'critical am-

biguity regarding the implications of the *Earley* decision on those currently under PRS supervision' meant that 'the defendants [were] entitled to qualified immunity for any conduct with respect to the arrest and incarceration of plaintiff in 2007 for violation of the terms of his PRS.' "). Thus, this Court finds that defendants Fischer, Duquesnay and Davis are entitled to qualified immunity for any actions they may have taken to enforce Robinson's PRS following *Earley* but prior to the New York Court of Appeals' decisions in *Garner* and *Sparber.*

**\*9** With regard to Robinson's incarceration between April 2008 and October 21, 2008, on May 28, 2008 DOCS informed Justice Newman that Robinson was "an individual with a potentially flawed PRS Term" and referred him "for a possible resentencing." (*See* page 5 above.) Pursuant to New York Corrections Law § 601-d, that is all DOCS was required to do.[FN13] N.Y. Corr. Law § 601-d ("Whenever it shall appear to the satisfaction of the department that an inmate in its custody, or to the satisfaction of the division of parole that a releasee under its supervision, is a designated person, such agency shall make notification of that fact to the court that sentenced such person, and to the inmate or releasee."); *see also Scott v. Fischer,* 616 F.3d at 111 ("DOC was not obligated affirmatively to seek resentencing for defendants with administratively-imposed PRS until 2008, when New York Correction Law § 601-d became effective."); *Santiago v. Fischer,* No. 09-CV-1383, 2009 WL 3852001 at *6 (E.D.N.Y. Nov. 18, 2009) ("The remedy established by the [N.Y.] Court of Appeals ... and codified in Correction Law § 601-d (effective June 30, 2008 ... ), called for persons in plaintiff's position to be resentenced."). In any event, there is no evidence that any of the individual defendants were responsible for notifying Justice Newman or taking (or failing to take) any action with respect to resentencing Robinson. Thus, they also are entitled to summary judgment for lack of personal involvement. *See, e.g., Sash v. United States,* 674 F.Supp.2d 531, 542-43 & n. 13 (S.D.N.Y.2009) (Peck, M.J.) ( & cases cited therein).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

FN13. As discussed above, DOCS is protected by Eleventh Amendment soverign immunity. (*See* pages 12-13 above.)

On the same day-July 29, 2008-that Justice Newman granted Robinson's state habeas petition, Robinson was held pursuant to a securing order obtained by the New York Attorney General and issued a state court (*See* page 6 above.) The New York Court of Appeals has ruled that M.H.L. § 10.06 applies to all detained sex offenders, regardless of whether they were unlawfully detained pursuant to an administratively imposed PRS term. *People v. Superintendent of Southport Corr. Facility,* 15 N.Y.3d 126, 905 N.Y.S.2d 107, 931 N.E.2d 76 (2010). Thus, Robinson's incarceration from July 2008 to October 2008 was lawful, but in any event defendants would be entitled to qualified immunity because it was not objectively unreasonable for them to believe New York Correction Law § 601-d and the state court-issued securing order were constitutional. *See Tellier v. Fields,* 280 F.3d 69, 86 (2d Cir.2000) ("[Q]ualified immunity properly protects officials who operate in areas of legal uncertainty and who act with a good faith belief that their behavior comports with constitutional and statutory directives."); *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998) ( "Qualified immunity protects a governmental official from suit for any actions that ... the official had an objectively reasonable good faith belief that the action taken was lawful.").[FN14] In any event, because the New York Attorney General (and not DOCS or DOP officials-and certainly not any of the three individual defendants) requested and obtained the securing order mandating Robinson's continued incarceration (*see* page 6 above), Robinson has failed to offer any evidence of defendants' personal involvement in the alleged constitutional violation.

FN14. *See also Rivers v. Fischer,* 2010 WL 3199675 at *1 (granting qualified immunity for two month period of incarceration following the enactment of N.Y. Corr. Law § 601-d where DOCS followed the mechanism prescribed by that statute); *Vives v. City of N.Y.,* 405 F.3d 115, 117 (2d Cir.2005) (" '[S]tate officials ... are entitled to rely on a presumptively valid state statute ... until and unless [the statute is] declared unconstitutional.... The enactment of a law forecloses speculation by enforcement officers concerning [the law's] constitutionality-with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.' ").

**\*10** Accordingly, the summary judgment motion of defendants Fischer, Duquesnay and Davis should be *GRANTED* dismissing Robinson's Fourth, Eighth and Fourteenth Amendment Claims.

### III. ROBINSON'S STATE LAW CLAIMS SHOULD BE DISMISSED

Robinson's Second Amended Complaint also asserts state law claims against Parole Officers Duquesnay and Davis for intentional infliction of emotional distress, and against DOCS, DOP and Commissioner Fischer for negligent hiring/supervision. (*See* page 2 above; Dkt. No. 21: 2d Am. Compl. ¶¶ 48-55.)

Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim. *E.g., Lipton v. Cnty. of Orange,* 315 F.Supp.2d 434, 446 (S.D.N.Y.2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (citing cases). Here, Robinson-who is represented by counsel-has not responded to, or even mentioned, the State Defendants' summary judgment motion seeking dismissal of the intentional infliction of emotional distress and negligent hiring/supervising claims. (Dkt. No. 37: State Br. at 25-26; *see generally* Dkt. No. 45: Robinson Br.)[FN15] Accordingly, Robinson's state law claims

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

should be dismissed as abandoned. *E.g., Bonilla v. Smithfield Assoc. LLC,* 09 Civ. 1549, 2009 WL 4457304 at *4 (S.D.N.Y. Dec.4, 2009) (Chin, D.J.) (Dismissing plaintiff's claims as abandoned by failing to address them in his opposition motion to defendant's motion to dismiss all claims.); *Thomas v. Atl. Express Corp.,* 07 Civ.1978, 2009 WL 856993 at *2 (S.D.N.Y. Mar.31, 2009) ("[Defendant] has moved to dismiss [plaintiff's] due process and breach of contract claims. In his opposition, [plaintiff] failed to respond to [defendant]'s argument that his due process claim should be dismissed, and therefore that claim is deemed abandoned."); *Burchette v. Abercrombie & Fitch Stores. Inc.,* 08 Civ. 8786, 2009 WL 856682 at *9 (S.D.N.Y. Mar.30, 2009) (dismissing plaintiff's constructive discharge claim because plaintiff abandoned it by failing to address it in her opposition motion to defendant's motion to dismiss all claims); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."); *Martinez v. Sanders,* 02 Civ. 5624, 2004 WL 1234041 at *3 (S.D.N.Y. June 3, 2004) ("Because Plaintiff did not address Defendant's motion to dismiss with regard to these claims, they are deemed abandoned."); *Anti-Monopoly. Inc. v. Hasbro, Inc.,* 958 F.Supp. 895, 907 n. 11 (S.D.N.Y.) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue ... which provides an independent basis for dismissal."), *aff'd,* 130 F.3d 1101 (2d Cir.1997), *cert. denied,* 525 U.S. 813, 119 S.Ct. 48, 142 L.Ed.2d 37 (1998).[FN16]

> FN15. While Robinson's opposition brief contains the heading, "Plaintiff's State Law Claims Do Not Fail As a Matter of Law," in the page under that heading he does not mention his infliction of emotional distress or negligent supervision claims at all. (Robinson Br. at 9.)

> FN16. If the Court were not to deem the

claims abandoned, since Robinson's section 1983 claims against the State Defendants are barred by sovereign and/or qualified immunity, this Court should decline to exercise pendent jurisdiction over Robinson's state law claims. *See, e.g., Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Maric v. St. Agnes Hosp. Corp.,* 65 F.3d 310, 314 (2d Cir.1995) ("Although a district court retains the discretion to exercise pendent jurisdiction and entertain state law claims once all federal claims have been dismissed, ... generally 'if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.' ") (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)), *cert. denied,* 516 U.S. 1115, 116 S.Ct. 917 (1996).

### CONCLUSION

**\*11** For the reasons set forth above, the State Defendants' summary judgment motion (Dkt. Nos. 36 & 43) should be *GRANTED,* and Robinson's second amended complaint (Dkt. No. 21) should be dismissed in its entirety.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the cham-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5376204 (S.D.N.Y.)
**(Cite as: 2010 WL 5376204 (S.D.N.Y.))**

bers of the Honorable Lewis A. Kaplan, 500 Pearl
Street, Room 1310, and to my chambers, 500 Pearl
Street, Room 1370. Any requests for an extension
of time for filing objections must be directed to
Judge Kaplan (with a courtesy copy to my cham-
bers). Failure to file objections will result in a
waiver of those objections for purposes of appeal.
*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88
L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund
v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993),
*cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130
L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85,
89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298,
300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113
S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Sec'y
of Health & Human Servs.,* 892 F.2d 15, 16 (2d
Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55,
57-59 (2d Cir.1988); *McCarthy v. Manson,* 714
F.2d 234, 237-38 (2d Cir.1983); 28 U.S.C. §
636(b)(1); Fed. R. Civ, P. 72.

S.D.N.Y.,2010.
Robinson v. Fischer
Slip Copy, 2010 WL 5376204 (S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Page 1

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Deborah Ann SCHERMAN, Plaintiff,
v.
NEW YORK STATE BANKING DEPARTMENT,
Defendant.

No. 09 Civ. 2476(DAB)(AJP).
March 19, 2010.

### REPORT AND RECOMMENDATION

ANDREW J. PECK, United States Magistrate Judge.
**\*1 To the Honorable Deborah A. Batts,
United States District Judge:**

Pro se plaintiff Deborah Scherman brings this employment discrimination action pursuant to the Americans with Disabilities Act ("ADA") against the her employer, the New York State Banking Department. (Dkt. No. 2: Compl. at 1-3.)

The Banking Department has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that: (1) Scherman's claim for money damages pursuant to ADA Title I is barred by the Eleventh Amendment because the Banking Department is "an agency of the State of New York"; and (2) Scherman fails to state a valid claim pursuant to ADA Title II because "Title I is the exclusive federal remedy for claims of disability discrimination in employment under the ADA." (Dkt. No. 6: Banking Dep't Notice of Motion; Dkt. No. 8: Banking Dep't Br. at 4-5; Dkt. No. 11: Banking Dep't Reply Br. at 1-3.)

For the reasons set forth below, the Banking Department's motion to dismiss should be *GRANTED.*

### FACTS

The facts alleged in Scherman's complaint are assumed to be true for purposes of this motion, and will be set forth herein without use of the preamble "Scherman alleges."

Scherman has been employed by the State of New York since 1979 and began working for the State Banking Department in 1989. (Dkt. No. 2: Compl. at 7; *see also* Dkt. No. 10: Scherman Br. at 1.) During the period in issue, 2003-2006, Scherman worked at the Banking Department's helpdesk. (Compl. at 7.)

#### *Scherman's Carpal Tunnel Syndrome, Surgeries and Grievances*

Scherman has experienced carpal tunnel syndrome for "at least the past 9 years." (Dkt. No. 10: Scherman Br. at 1-2; *see* Dkt. No. 2: Compl. at 7-8.) Scherman underwent carpal tunnel release surgery in both hands in 2003 and again in 2004. (Compl. at 8.) Additionally, Scherman underwent shoulder adhesive repair surgery in March 2006. (Compl. at 3, 7.) After each surgery, Scherman was assigned tasks which required "heavy" manual labor despite her condition. (Compl. at 7.)

Following carpal tunnel surgery in 2003, Scherman returned to work at the Banking Department's helpdesk and received a laptop exchange assignment which "cause[d] an exhausting strain" on Scherman's hands and wrists. (Compl. at 8.) "[T]he extreme usage from the laptop assignment while still in the healing ph [ ]ase necessitat[ed] another [ carpal tunnel] release surgery," in October and December 2004. (*Id.*) Upon returning to work, Scherman provided a doctor's note stating that she should not lift "more than 5lbs." (*Id.*)

In July 2005, Scherman met with Diane Rulon of the Banking Department. (Compl. at 8.) Scherman discussed the "possibility of doing onsite training" of Banking Department staff as well as the "possibility of [Scherman] being promoted" as a result of her recently passing the civil service exam. (*Id.*) Rulon informed Scherman that her score was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

"too low on the list" and because of problems in the IT department, the chances of her getting a promotion were "like none." (*Id.*) However, during this time frame, temporary employees were hired and promoted over Scherman. (*Id.*)

*\*2* In March 2006, Scherman underwent shoulder repair surgery. (Compl. at 7.) Upon returning to work, Scherman again supplied a doctor's note that she should not lift more than five pounds. (Compl. at 7-8.) On April 12, 2006, the Banking Department notified Scherman that she now also would be responsible for "all printer related issues," including "maintaining, tracking, and ordering" printer parts and toner cartridges. (Compl. at 7.) Despite the doctor's note, Scherman was expected to handle toner cartridges weighing "close to 20lbs." (*Id.*) [FN1]

> FN1. Scherman's complaint refers to several other instances of unfair treatment: in April 2006, the Banking Department reassigned Scherman to another location with "no reason given"; soon after, Scherman began receiving e-mails from her supervisor, Irving Leaf, intended to "embarrass" her; and in June 2006, Scherman's requests for personal leave were denied even though her father was seriously ill. (Compl. at 7-8.)

### Scherman's Claims and the Banking Department's Motion to Dismiss

Scherman initially brought this action pursuant to ADA Title I. (Dkt. No. 2: Compl. at 1.) In response to the Banking Department's motion to dismiss, Scherman restyled her action as pursuant to ADA Title II. (Dkt. No. 10: Scherman Br. at 2.) [FN2] Scherman's complaint requests unspecified compensatory damages and attorney's fees for the physical, mental, and emotional pain and suffering caused by the Banking Department's actions. (Compl. at 4.)

> FN2. On July 15, 2009, after the Banking Department filed its motion to dismiss,

Scherman requested an extension of her time to respond and indicated a desire to amend the complaint; on July 24, 2009, Judge Batts granted a two month extension for Scherman to oppose the motion and/or amend the complaint. (Dkt. No. 9: 7/24/09 Order.) Scherman failed to submit an amended complaint. Her opposition brief notes that it was filed with the assistance of counsel, although counsel has not formally appeared. (*See* Scherman Br. at 4.) Because Scherman technically is pro se, this Court will liberally construe her complaint as raising claims pursuant to ADA Titles I and II. (*See* cases cited at pages 8-9 be- low.)

The Banking Department has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (Dkt. No. 6: Banking Dep't Notice of Motion to Dismiss at 1; Dkt. No. 11: Banking Dep't Reply Br. at 1), on the grounds that: (1) the Court lacks subject matter jurisdiction over Scherman's claims under Title I of the ADA because the Banking Department, "as an agency of the State of New York, is shielded by state sovereignty under the Eleventh Amendment of the United States Constitution" (Dkt. No. 8: Banking Dep't Br. at 4); and (2) Scherman fails to state a valid claim under Title II of the ADA because "Title I is the exclusive federal remedy for claims of disability discrimination in employment under the ADA" (Banking Dep't Reply Br. at 2-3).

### ANALYSIS
### I. THE STANDARDS GOVERNING A MOTION TO DISMISS

#### A. The Twombly-Iqbal "Plausibility" Standard

In two decisions in the last few years, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain state-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

ment of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it *demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.* A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

To survive a motion to dismiss, *a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

**\*3** Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.* Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.* Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal,* --- U.S. ----, ---- - ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009) (citations omitted & emphasis added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57, 570, 127 S.Ct. 1955, 1965-66, 1974, 167 L.Ed.2d 929 (2007) (retiring the *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), pleading standard that required denying a Rule 12(b) (6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")).[FN3]

> FN3. *Accord, e.g., Harris v. Mills,* 572 F.3 d 66, 71-72 (2d Cir.2009); *Lindner v. Int'l Bus. Machs. Corp.,* 06 Civ. 4751, 2008 WL 2461934 at \*3 (S.D.N.Y. June 18, 2008); *Joseph v. Terrence Cardinal Cooke Health Care Ctr.,* 07 Civ. 9325, 2008 WL 892508 at \*1 (S.D.N.Y. Apr.2, 2008); *Elektra Entm't Group, Inc. v. Barker,* 551 F.Supp.2d 234, 237 (S.D.N.Y.2008); *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,* 551 F.Supp.2d 210, 216-17 (S.D.N.Y.2008); *Diana Allen Life Ins. Trust v. BP P.L.C.,* 06 Civ. 14209, 2008 WL 878190 at \*3 (S.D.N.Y. Mar.31, 2008) .

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

### B. *Consideration Of Documents Attached To Or Referred To In The Complaint*

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." *Vassilatos v. Ceram Tech Int'l, Ltd.,* 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing *Kopec v. Coughlin,* 922 F.2d 152, 154-55 (2d Cir.1991)).[FN4] The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference. *E.g., ATSI Comme'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference....").[FN5]

> FN4. *Accord, e.g., Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006); *Aniero Concrete Co. v. N.Y.C. Constr. Auth.,* 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); *Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,* 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar.9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed.R.Civ.P. 56. See Fed.R.Civ.P. 12(b); *Friedl v. City of N.Y.,* 210 F.3d 79, 83 (2d Cir.2000); *Fonte v. Bd. of Managers of Cont'l Towers Condo.,* 848 F.2d 24, 25 (2d Cir.1988).

> FN5. *See also, e.g., Yak v. Bank Brussels Lambert,* 252 F.3d 127, 130 (2d Cir.2001) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)); *Paulemon v. Tobin,* 30 F.3d 307, 308-09 (2d Cir.1994); *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

*4 "However, before materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document." *Faulkner v. Beer,* 463 F.3d at 134 (citations omitted).

In this case, the Court need not refer to any of the documents attached to Scherman's complaint because the issue is one of law. In any event, the documents do not help Scherman in connection with this motion.

\* \* \* \*

The Court's role in deciding a motion to dismiss " 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Saunders v. Coughlin,* 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar.15, 1994) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)); *accord, e.g., Watson v. McGinnis,* 964

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

F.Supp. 127, 130-31 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.).

Even after *Twombly* and *Iqbal*, when reviewing a pro se complaint, the Court must use less stringent standards than if the complaint had been drafted by counsel and must construe a pro se complaint liberally. *See, e.g., Harris v. Mills,* 22 A.D. 379, 572 F.3d 66, 72 (2d Cir.2009); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Watson v. McGinnis,* 964 F.Supp. at 131; *Saunders v. Coughlin,* 1994 WL 88108 at *2 (citing *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). However, "[d]ismissal under Rule 12(b) (6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief...." 2 *Moore's Federal Practice* § 12.34[4] [a], at 12-72.7 (2005). Thus, the " 'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.' " *Id.,* § 12.34[1] [b], at 12-61; *see also, e.g., Joyner v. Greiner,* 195 F.Supp.2d 500, 503 (S.D.N.Y.2002) (action dismissed because pro se plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

## II. SCHERMAN'S ADA TITLE I CLAIM SHOULD BE DISMISSED AS BARRED BY THE ELEVENTH AMENDMENT

The Banking Department asserts that Scherman's employment discrimination claims pursuant to Title I of the ADA are "barred by New York State's Eleventh Amendment sovereign immunity." (Dkt. No. 8: Banking Dep't Br. at 4-5.)

### A. Eleventh Amendment Immunity Generally

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. As the Second Circuit has explained:

The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states,

as the literal language of the Amendment provides, but also over suits against such states brought by their own citizens. Thus, *it is clear that, with few exceptions, federal courts are barred from entertaining suits by a private party against a state in its own name.*

*\*5 Dwyer v. Regan,* 777 F.2d 825, 835 (2d Cir.1985) (emphasis added); *accord, e.g., Tenn. Student Assistance Corp. v. Hood,* 541 U.S. 440, 446, 124 S.Ct. 1905, 1909, 158 L.Ed.2d 764 (2004); *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001); *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir.2009); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006) ; *Iwachiw v. Port Auth. of N.Y., N.J.,* 151 Fed. Appx. 93, 94 (2d Cir.2005); *Clissuras v. City Univ. of N .Y.,* 359 F.3d 79, 81 (2d Cir.), *cert. denied,* 543 U.S. 987, 125 S.Ct. 498, 160 L.Ed.2d 372 (2004); *Dube v. State Univ. of N.Y.,* 900 F.2d 587, 594 (2d Cir.), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991).[FN6]

FN6. *See also, e.g., Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990) ("This Court has drawn upon principles of sovereign immunity to construe the [Eleventh] Amendment to 'establish that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." ' "); *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 662-63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) ("While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought by her

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

own citizens as well as by citizens of another State.") (citing cases).

The result is no different when suits are brought against state agencies as opposed to the State in its own name. "For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity." *Fields v. Walthers,* No. 94-CV-1659, 1997 WL 204308 at *2 (N.D.N.Y. Apr. 5, 1997) (Pooler, D.J.); *accord, e.g., Gollomp v. Spitzer,* 568 F.3d at 366; *Gorton v. Gettel,* 554 F.3d 60, 62 (2d Cir.2009); *Deposit Ins. Agency v. Superintendent of Banks of N.Y.,* 482 F.3d 612, 617 (2d Cir.2007); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d at 236; *In re Charter Oak Assocs.,* 361 F.3d 760, 765 (2d Cir.), *cert. denied,* 543 U.S. 955, 125 S.Ct. 408, 160 L.Ed.2d 316 (2004); *Clissuras v. City Univ. of N.Y.,* 359 F.3d at 81; *Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 414 (2d Cir.1999); *Harris v. N.Y.S. Educ. Dep't,* 419 F.Supp.2d 530, 533 (S.D.N.Y. Mar.6, 2006).[FN7]

> FN7. *See also, e.g., United States v. City of Yonkers,* 96 F.3d 600, 619 (2d Cir.1996) (New York State Education Department and State Board of Regents entitled to Eleventh Amendment immunity), *cert. denied,* 521 U.S. 1104, 117 S.Ct. 2479, 138 L.Ed.2d 988 (1997); *Jackson v. Johnson,* 985 F.Supp. 422, 426 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.) (New York State Department of Correctional Services entitled to Eleventh Amendment immunity, citing cases).

The State and its agencies are protected by Eleventh Amendment immunity "whether the relief sought is legal or equitable." *Papasan v. Allain,* 478 U.S. at 276, 106 S.Ct. at 2939; *accord, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. at 100, 104 S.Ct. at 908; *Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) ("Expressly applying to suits in equity as well as at law, the [Eleventh A]mendment necessar-

ily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a state.").[FN8]

> FN8. *See also, e.g., Jacobs v. Mostow,* 271 Fed. Appx. 85, 88 (2d Cir.2008); *Walker v. New York,* 150 Fed. Appx. 28, 30 (2d Cir.2005), *cert. denied,* 549 U.S. 1265, 127 S.Ct. 1493, 167 L.Ed.2d 229 (2007); *Rosenberger v. N.Y.S. Office of Temp. & Disability Assistance,* 153 Fed. Appx. 753, 754 (2d Cir.2005); *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.) ("An unconsenting state is immune not only from suits for damages but also from declaratory and equitable actions."), *cert. denied,* 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990); *Dube v. State Univ. of N.Y.,* 900 F.2d at 594; *Harris v. N.Y.S. Educ. Dep't,* 419 F.Supp.2d at 533 ("This bar to suit applies regardless of the relief sought."); *DiNapoli v. DiNapoli,* 95 Civ. 7872, 1995 WL 604607 at *1 (S.D.N.Y. Sept.22, 1995) (Sotomayor, D.J.).

The Second Circuit has developed a two factor test to determine whether an agency is an arm of the state: "(1) 'the extent to which the state would be responsible for satisfying any judgment that might be entered against the defendant entity'; and (2) 'the degree of supervision exercised by the state over the defendant entity.' " *Clissuras v. City Univ. of N.Y.,* 359 F.3d at 82 (quoting *Pikulin v. City Univ. of N.Y.,* 176 F.3d 598, 600 (2d Cir.1999)).[FN9] The Banking Department satisfies both factors. First, the Banking Department is included in the State's Executive Budget, and the State Comptroller pays the Banking Department's expenses out of State funds. (*See* State of New York Banking Department-History, at http://www.banking.state.ny.us/history.htm.) Second, the Superintendent and the Banking Department board members are appointed by the Governor with the advice and consent of the State Senate. N.Y. Bank-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

ing Law §§ 12-13. Scherman does not contest that the Banking Department qualifies as an "arm of the state" (*see* Dkt. No. 10: Scherman Br.), and prior cases have held the Banking Department to be an arm of the state for Eleventh Amendment purposes. *E.g., Deposit Ins. Agency v. Superintendent of Banks of N.Y.,* 482 F.3d at 617 ("[W]e assume, and no party disputes, ... that the Superintendent is an arm of the State of New York and thus entitled to whatever immunity the Eleventh Amendment may bestow."); *Bechtel v. N.Y. S. Banking Dep't,* No. 92CV 182, 1997 WL 667784 at *2 (W.D.N.Y. Oct. 14, 1997).

> FN9. *See also, e.g., Gollomp v. Spitzer,* 568 F.3d at 366; *Gorton v. Gettel,* 554 F.3d at 62; *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d at 236-37.

*6 Accordingly, absent an exception to Eleventh Amendment immunity, the Banking Department is immune from Scherman's suit for damages.

**B. *No Exception to Eleventh Amendment Immunity Exists Here***

"The Eleventh Amendment bar to suit is not absolute." *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). As the Supreme Court has explained:

While [Eleventh Amendment] immunity from suit is not absolute, we have recognized only two circumstances in which an individual may sue a State. First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment-an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance. Second, a State may waive its sovereign immunity by consenting to suit.

*College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd .,* 527 U.S. 666, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999) (citations omitted); *see, e.g., Bd. of Trs. of Univ. of Ala. v.*

*Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001) ("Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority,' " including § 5 of the 14th Amendment.); *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. at 304, 110 S.Ct. at 1872; *In re Charter Oaks Assocs.,* 361 F.3d 760, 765 (2d Cir.2004).FN10

> FN10. *See also, e.g., Close v. State of N.Y.,* 125 F.3d 31, 36 (2d Cir.1997); *Gaynor v. Martin,* 77 F.Supp.2d 272, 281 (D.Conn.1999); *Nash v. N.Y.S. Executive Dep't, Div. of Parole,* 96 Civ. 8354, 1999 WL 959366 at *5 (S.D.N.Y. Oct.20, 1999).

Neither exception to Eleventh Amendment immunity applies in this case. First, the Supreme Court has held that Congress's enactment of Title I of the ADA did not validly abrogate state sovereign immunity. *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. at 3 68, 121 S.Ct. at 964-65 (2001); *accord, e.g., Darcy v. Lippman,* No. 08-2293, 2009 WL 3416168 at *1 (2d Cir. Oct.22, 2009) ("Abrogation of state sovereign immunity is [not] accomplished ... by ADA Title I ...."); *Nicolae v. Office of Vocational & Educ. Servs. for Individuals with Disabilities,* 257 Fed. Appx. 455, 456-67 (2d Cir.2007); *Palma v. Workers Comp. Bd. of the State of N.Y.,* 151 Fed. Appx. 20, 22 (2d Cir.2005), *cert. denied,* 549 U.S. 814, 127 S.Ct. 347, 166 L.Ed.2d 24 (2006); *Perry v. State Ins. Fund,* 83 Fed. Appx. 351, 353 (2d Cir.2003) ("[T]he Fund is a 'state agency' entitled to sovereign immunity and therefore that [plaintiff's] claims asserted under Title I of the ADA cannot proceed.") (citations omitted); *Melrose v. N.Y.S. Dep't of Health Office of Prof' l Med. Conduct,* 05 Civ. 8778, 2009 WL 211029 at *5 (S.D.N.Y. Jan.26, 2009) (State agency "is entitled to Eleventh Amendment immunity for the purposes of Plaintiff's [ADA] claim against it for money damages ."). Second, the State (and the Banking Department) did not waive its Eleventh Amendment immunity.FN11 (*See* Dkt. No. 8: Banking

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

Dep't Br. at 5.)

> FN11. "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [the Court] will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' " *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360-61, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)); *see also, e.g., College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. at 675-76, 119 S.Ct. at 2226; *Atascadero State Hosp. v. Scalon,* 473 U.S. 234, 239-40, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985).

Accordingly, Scherman's ADA Title I claim should be dismissed as barred by the Eleventh Amendment.

### III. *SCHERMAN'S TITLE II ADA CLAIM SHOULD BE DISMISSED BECAUSE ADA TITLE I DEALS WITH EMPLOYMENT DISCRIMINATION*

*7 In opposing the Banking Department's motion to dismiss, Scherman (assisted by counsel) changed her reliance to ADA Title II, rather than Title I. (Dkt. No. 10: Scherman Br. at 2-3.) [FN12] The Banking Department's reply moved pursuant to Rule 12(b)(6) to dismiss Scherman's employment discrimination claims under ADA Title II on the grounds that "Title I is the exclusive federal remedy for claims of disability discrimination in employment under the ADA." (Dkt. No. 11: Banking Dep't Reply Br. at 2-3.) [FN13]

> FN12. Scherman's opposition brief sought leave to amend, in order to formally assert the Title II claim. (Scherman Br. at 2.) The Court liberally construes Scherman's existing pro se complaint and addresses the

Title II claim.

> FN13. Title II's operative section reads: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The Supreme Court has yet to decide whether Congress validly abrogated state sovereign immunity by its enactment of Title II. *See Bd. of Trs. of Univ. of Ala. v. Garrett* 531 U.S. 356, 360, 121 S.Ct. 955, 148 L.Ed.2d 866 n .1, 531 U.S. 356, 121 S.Ct. 955, 960 n. 1, 148 L.Ed.2d 866 (2001) ("We are not disposed to decide the constitutional issue whether [ADA] Title II, which has somewhat different remedial provisions from [ADA] Title I, is appropriate legislation under § 5 of the Fourteenth Amendment when the parties have not favored us with briefing on the statutory question.").

The Supreme Court also has not addressed whether a claim for employment discrimination may be brought by a plaintiff under Title II of the ADA, [FN14] and the Courts of Appeals that have addressed the issue are divided. *Compare, e.g., Zimmerman v. Oregon Dep't of Justice,* 170 F.3d 1169, 1172-84 (9th Cir.1999) (Title II does not apply to employment discrimination), *cert. denied,* 531 U.S. 1189, 121 S.Ct. 1186, 149 L.Ed.2d 103 (2001); *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006, 1014 (6th Cir.1997) ("[T]he statutory framework of the ADA expressly limits discrimination in employment practices to Title I of the ADA." Refuses to allow employment discrimination claim under ADA Title III.), *cert. denied,* 522 U.S. 1084, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998); *Decker v. Univ. of Houston,* 970 F.Supp. 575, 577-80 (S.D.Tex.1997) (Title II is inapplicable to employment discrimination claims; "[a]ny other reading simply ignores the ADA's statutory scheme."), *aff'd* 159 F.3d 1355 (5th Cir.1998); with

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

*Bledsoe v. Palm Beach County Soil & Water Conservation Dist.,* 133 F.3d 816, 825 (11th Cir.) (Title II permits an employment discrimination claim), *cert. denied,* 525 U.S. 826, 119 S.Ct. 72, 142 L.Ed.2d 57 (1998).[FN15]

     FN14. While the Supreme Court has declined to rule on whether an employment discrimination claim can be brought under Title II of the ADA, it noted that Title I of the ADA exclusively deals with employment discrimination claims. *Bd. of Trs. of Univ. of Ala. v. Garrett* 531 U.S. at 360 n. 1, 121 S.Ct. at 960 n. 1 (" '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' ").

     FN15. The Fourth, Fifth, and Tenth Circuits have assumed without deciding that ADA Title II applies to employment discrimination claims against public entities. *See Davoll v. Webb,* 194 F.3d 1116, 1130 (10th Cir.1999); *Holmes v. Texas A & M Univ.,* 145 F.3d 681, 684 (5th Cir.1998); *Doe v. Univ. of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1265 n. 8 (4th Cir.1995).

The Second Circuit has yet to decide whether Title II of the ADA applies to employment discrimination. *See e.g., Perry v. State Ins. Fund,* 83 Fed. Appx. 351, 354 n. 1 (2d Cir.2003) ("There remain questions regarding ... whether Title II ADA violations can be based on employment discrimination.... We need not, however, reach these questions at this time."); *Mullen v. Rieckhoff,* No. 98-7019, 189 F.3d 461 (table), 1999 WL 568040 at *1 (2d Cir. July 18, 1999) (noting "a split of authority over whether an employment discrimination plaintiff may avoid the ADA's requirement of an EEOC charge by filing under Title II of that Act," but not reaching the issue). District court decisions in this Circuit are split on this issue, but the better reasoned decisions

have held that ADA Title I is the exclusive remedy for employment discrimination claims, and thus employment claims under Title II are precluded. *See, e.g., Chiesa v. N.Y.S. Dep't of Labor,* 638 F.Supp.2d 316, 321 (N.D.N.Y.2009); *Melrose v. N.Y.S. Dep't of Health Office of Prof'l Med. Conduct,* 05 Civ. 8778, 2009 WL 211029 at *9 (S.D.N.Y. Jan.26, 2009); *Fleming v. State Univ. of N.Y.,* 502 F.Supp.2d 324, 333 (E.D.N.Y.2007); *Ayantola v. Cmty. Technical Colls. of the State of Conn. Bd. of Trs.,* No. 05 CV 957, 2007 WL 963178 at *2 (D.Conn. Mar. 30, 2007); *Cormier v. City of Meriden,* No. 03 CV 1819, 2004 WL 2377079 at *8 (D.Conn. Sept. 30, 2004); *Sworn v. W. N.Y. Children's Psychiatric Ctr.,* 269 F.Supp.2d 152, 157-58 (W.D.N.Y.2003); *Filush v. Town of Weston,* 266 F.Supp.2d 322, 326-31 (D.Conn.2003); *Syken v. State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal,* 02 Civ. 4673, 2003 WL 1787250 at *11 (S.D.N.Y. Apr.2, 2003).[FN16]

     FN16. District court decisions in this Circuit reaching a contrary conclusion include, *e.g., Olsen v. State of N.Y.,* No. 04 CV 0419, 2005 WL 5885368 at *5 (E.D.N.Y. Mar. 9, 2005) (siding with those cases that permit employment discrimination claims under Title II); *Transp. Workers Union of Am. v. N.Y.C. Transit Auth.,* 342 F.Supp.2d 160, 170-75 (S.D.N.Y.2004) (exploring the history and language of ADA Title II and concluding that it applies to employment discrimination); *Smith v. State Univ. of N.Y.,* No. 00-CV-1454, 2003 WL 1937208 at *8 (N.D.N.Y. Apr.23, 2003) (Title II applicable to employment discrimination despite acknowledging that the Supreme Court "certainly hinted that it was skeptical that Title II would cover such claims."); *Worthington v. City of New Haven,* No. 94-CV-00609, 1999 WL 958627 at *7 (D.Conn. Oct.5, 1999) (employment discrimination is covered by Title II).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

**\*8** Courts holding that ADA Title II permits employment discrimination claims generally have deferred to 28 C.F.R. § 35.140, a Department of Justice regulation interpreting Title II as prohibiting employment discrimination by public entities.[FN17] *E .g., Bledsoe v. Palm Beach County Soil & Water Conservation Dist.* 133 F.3d at 823 ("The DOJ regulations provide clearly that Title II encompasses employment actions against public entities.... [W]e cannot ignore the DOJ's reasonable construction of statutory language."); *Smith v. State Univ. of N.Y.,* 2003 WL 1937208 at \*8; *Worthington v. City of New Haven,* 1999 WL 958627 at \*7.

> FN17. 28 C.F.R. § 35.140(a) states:
>
> No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity. 28 C.F.R. § 35.140(a).

When faced with an administrative agency's interpretation of a statute, the Supreme Court has provided a two-step process for reviewing the agency's construction of the statute. *See, e.g., Chevron U.S.A. Inc., v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-44, 104 S.Ct. 2778, 2781-82. 81 L.Ed.2d 694 (1984). The first step is to determine whether Congressional intent is clear. *Id.* at 842, 104 S.Ct. at 2781. "If the intent of Congress is clear, that is then end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43, 104 S.Ct. at 2781. If Congressional intent is ambiguous, the second step is to determine if the agency's regulations are "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782.

The structure of the ADA demonstrates Congress' clear intent for Title II not to apply to employment claims. First, ADA Title I, titled "Employment" by Congress, contains detailed employment provisions. *See* 42 U.S.C. § 12112. ADA Title II, titled "Public Services" by Congress, lacks any employment provisions. *See* 42 U.S.C. § 12132 . Under Title I, a " 'qualified individual' " with a disability "means an individual who ... can perform the essential functions of the employment position...." 42 U.S.C. § 12111(8). Title II, however, defines the same phrase as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Thus, while Title I defines a "qualified individual" with a disability in terms of employment, Title II defines it on the basis of a person's ability to receive services or participate in programs or activities. *See, e.g., Zimmerman v. Oregon Dep't of Justice,* 170 F.3d at 1176. Congress' omission of any mention of employment in Title II is presumed to be an intentional exclusion. While the Supreme Court has not decided this issue, it certainly has indicated its views that Title I, and not Title II also, deals with ADA employment discrimination by governmental entities. *See Bd. of Trs. of Univ. of Ala. v. Garrett* 531 U.S. at 360 n. 1, 121 S.Ct. at 960 n. 1 (noting that Title I of the ADA "expressly deals" with claims of employment discrimination.); *see also, e.g., Zimmerman v. Oregon Dep't of Justice,* 170 F.3d at 1172; *Melrose v. N.Y.S. Dep't of Health Office of Prof'l Med. Conduct,* 2009 WL 211029 at \*8 (Supreme Court "seemed to indicate that a plaintiff" may not bring an employment discrimination claim under ADA Title II.); *Fleming v. State Univ. of N.Y.,* 502 F.Supp.2d at 333 ("The ADA includes a title devoted exclusively to employment; it is Title I.... Title II, meanwhile, says nothing about ... employment practice[s]."); *Cormier v. City of Meriden,* 2004 WL 2377079 at \*5 ("The headings of the ADA clearly distinguish between the titles governing disability discrimination in employment and disability discrimination in public services."); *Syken v. State of N.Y. Executive Dep't, Div. of Hous. & Cmty. Renewal,* 2003 WL 1787250 at \*8; *Filush v. Town of Weston,* 266 F.Supp.2d at 329-30.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

\*9 Second, if employment discrimination claims were allowed to be brought under ADA Title II, Title I would become redundant. Under Title I, an "employer" is "a person engaged in an industry affecting commerce who has 15 or more employees." 42 U.S.C. § 12111(5). Holding Title II to apply to employment discrimination claims would render the particularity with which Congress defined an employer to be superfluous. *See, e. g., Chiesa v. N.Y.S. Dep't of Labor,* 638 F.Supp.2d at 321 ("Given the specific steps taken by Congress to tailor Title I for employers, Title II is too generic for use against employers and is not intended for such use."); *Syken v. State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal,* 2003 WL 1787250 at \*9 ("[A]llowing employment discrimination claims under Title II would make Title I redundant as applied to public employees."); *Filush v. Town of Weston,* 266 F.Supp.2d at 330.

Third, Title I incorporates the remedies and procedures of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 12117(a), while Title II incorporates provisions from the Rehabilitation Act, *see* 42 U.S.C. § 12133. *See, e.g., Syken v. State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal,* 2003 WL 1787250 at \*9 & n. 11. As Courts in this District have noted: "[u]nlike Title I, Title II does not require a plaintiff to exhaust his administrative remedies prior to filing suit. Therefore, allowing a plaintiff to bring an employment discrimination suit under Title II allows him to bypass the administrative exhaustion requirement of Title I." *Syken v. State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal,* 2003 WL 1787250 at \*9 (citations & fn. omitted); *accord, e.g., Zimmerman v. Oregon Dep't of Justice,* 170 F.3d at 1177-78; *Melrose v. N.Y.S. Dep't of Health Office of Prof'l Med. Conduct,* 2009 WL 211029 at \*9; *Cormier v. City of Meriden,* 2004 WL 2377079 at \*6-7; *Sworn v. W.N.Y. Children's Psychiatric Ctr.,* 269 F.Supp.2d at 157 & n. 4; *Filush v. Town of Weston,* 266 F.Supp.2d at 330. Indeed, to read Title II to allow employment discrimination claims would violate the " 'elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.' " *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985).

Fourth, Congress delegated regulatory authority to promulgate regulations for ADA Title I and Title II to different agencies. Congress gave the EEOC authority to issue regulations to carry out Title I. *See* 42 U.S.C. § 12116. Title II, on the other hand, gave the Attorney General authority to promulgate regulations. *See* 42 U.S.C. § 12134(a). If both Title I and II apply to employment discrimination, "then it is possible for state and local governments to be subjected to conflicting regulations." *Zimmerman v. Oregon Dep't of Justice,* 170 F.3d at 1178; *see Syken v. State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal,* 2003 WL 1787250 at \*9.

\*10 Because the overall structure and language of the ADA unambiguously expresses Congress' intent that employment discrimination claims be brought under Title I only, this Court can end its inquiry at the first step of the *Chevron* analysis, and should not consider the DOJ regulations. *See, e.g., Zimmerman v. Oregon Dep't of Justice,* 170 F.3d at 1173; *Fleming v. State Univ. of N.Y.,* 502 F.Supp.2d at 333; *Cormier v. City of Meriden,* 2004 WL 2377079 at \*8; *Filush v. Town of Weston,* 266 F.Supp.2d at 328. Title II of the ADA does not apply to employment discrimination.

Accordingly, Scherman's employment discrimination claim under Title II of the ADA fails to state a claim upon which relief can be granted and should be dismissed.

### CONCLUSION

For the reasons stated above, the Banking Department's motion to dismiss (Dkt. No. 6) should be *GRANTED.*

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 997378 (S.D.N.Y.)
**(Cite as: 2010 WL 997378 (S.D.N.Y.))**

72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Batts (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038. 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

S.D.N.Y.,2010.
Scherman v. New York State Banking Dept.
Slip Copy, 2010 WL 997378 (S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Page 1

Slip Copy, 2011 WL 5119574 (S.D.N.Y.)
**(Cite as: 2011 WL 5119574 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Earla G. REDMAN, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF COR-
RECTIONAL SERVICES, Defendant.

No. 10 CV 5368(VB).
Oct. 12, 2011.

### MEMORANDUM DECISION

BRICCETTI, District Judge.

*1 Plaintiff Earla G. Redman brings this action alleging she was wrongfully terminated by defendant New York State Department of Correctional Services ("DOCS"). Plaintiff seeks reinstatement and damages for discrimination on the basis of disability pursuant to Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, et seq. ("FMLA"). Now pending is defendant's motion to dismiss the third amended complaint (Doc. # 37), which, for the following reasons, is GRANTED. However, as set forth below, the Court will permit plaintiff to file a fourth amended complaint asserting an ADA claim against individual defendants.

### BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all uncontroverted factual allegations of the amended complaint as true. Because defendant's motion is made under Rule 12(b)(1), the Court also reviews defendant's factual assertions.

Plaintiff was employed by defendant as a corrections officer. Plaintiff suffers from depression, anxiety, and post traumatic stress disorder. Plaintiff claims defendant knew about her disability.

Plaintiff claims she was harassed, discriminated against, and ultimately terminated because of her disability. She claims defendant released her medical records to other employees and that she was subject to constant surveillance. Plaintiff further claims that she was ostracized, and that her work hostile work environment compounded her mental illness.

On October 28, 2004, defendant issued a notice of discipline to plaintiff due to excessive absenteeism.

On July 18, 2005, plaintiff signed a disciplinary settlement agreement. The agreement required plaintiff to serve a twelve-month disciplinary evaluation period during which her performance would be monitored.

Plaintiff was absent from work eighteen times during her evaluation period. Twelve of these absences were considered "AWOL." Defendant defines an absence as "AWOL" when an employee fails to provide the requisite documentation for that absence.

Plaintiff was terminated on July 24, 2006. Defendant claims plaintiff was terminated because she failed to comply with the terms of her disciplinary settlement agreement.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 3, 2006, and received a Notice of Right to Sue letter in April 2010. Plaintiff seeks damages and reinstatement to her former position.

### DISCUSSION

Defendant moves to dismiss plaintiff's claim under Rules 12(b) (1) and 12(b)(6). Because dismissal of an action for a lack of subject matter jurisdiction renders all other accompanying defenses and motions moot, the Court will first consider defendant's Rule 12(b)(1) motion.

A motion to dismiss under Rule 12(b)(1) for

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5119574 (S.D.N.Y.)
**(Cite as: 2011 WL 5119574 (S.D.N.Y.))**

lack of subject matter jurisdiction "challenges the court's statutory or constitutional power to adjudicate the case before it." 2A James W. Moore, Moore's Federal Practice, ¶ 12.07, at 12–49 (2d ed.1994). "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & CorteseCosta, P.C. v. Dupont,* 565 F.3d 56, 62 (2d Cir.2009). Once the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942). The court should not draw argumentative inferences in plaintiff's favor. *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.,* 968 F.2d 196, 198 (2d Cir.1992).

**I. ADA Claim Against DOCS**

*\*2* Plaintiff's ADA claim must be dismissed under Rule 12(b)(1) because it is barred by the Eleventh Amendment. The Eleventh Amendment precludes suits against states and state agencies unless the state expressly waives its immunity or Congress abrogates that immunity. *See Seminole Tribe v. Florida,* 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Supreme Court has explicitly held that Congress did not abrogate sovereign immunity with respect to Title I of the ADA. *Bd. of Trustees v. Garrett,* 531 U.S. 356, 364, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Rolle v. N.Y. State Liquor Auth.,* 2006 WL 2254807, at \*3 (S.D.N.Y. Aug.4, 2006). Nor has New York State waived its immunity from suits seeking either monetary or injunctive relief in federal court. *See Canales–Jacobs v. New York State Office of Court Admin.,* 640 F.Supp.2d 482, 498 (S.D.N.Y.2009). DOCS is a State agency. Thus, plaintiff cannot bring an ADA claim against this defendant, and her claim must be dismissed.

Plaintiff is not granted leave to re-plead an ADA claim against DOCS.

**II. ADA Claims Against Individual Defendants**

Plaintiff does not name any individual defendants in her third amended complaint. However, she does refer to potential individual defendants in her handwritten attachment to the third amended complaint [FN1] and in her previous complaints.

> FN1. The printed form third amended complaint, at page 3, states that the factual "explanation [is continued] on additional sheets."

To the extent plaintiff seeks to sue any individual defendants for money damages under the ADA, these claims are barred because individuals cannot be held liable for money damages under that statute in either their personal or official capacities. *Percibulli v. New York,* 2010 WL 3958731, at \*4 (S.D.N.Y. Sep.28, 2010); *Candelaria v. Cunningham,* 2000 WL 798636, at \*2 (S.D.N.Y. June 20, 2000). Accordingly, all possible claims against any individual defendants for money damages are precluded.

However, certain individual defendants may be held liable in their official capacity to the extent plaintiff seeks prospective injunctive relief. The Supreme Court has explicitly recognized that the Eleventh Amendment does not bar an ADA suit seeking prospective injunctive relief against an individual in his official capacity under the exception to sovereign immunity set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Bd. of Trustees v. Garrett,* 531 U.S. at 374 n. 9.

In the employment context, claims for reinstatement are actionable when made against a state official with the power to reinstate. *See State Emps. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 96 (2d Cir.2007) ("[C]laims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar.").

Construing this pro se litigant's pleadings liberally under *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court will allow plaintiff to file a fourth amended complaint to in-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5119574 (S.D.N.Y.)
**(Cite as: 2011 WL 5119574 (S.D.N.Y.))**

clude the individuals, if any, against whom she seeks prospective injunctive relief and who have the authority to reinstate her to her previous position. Any such defendants must be named in the caption of the complaint, and plaintiff must assert specific allegations against each of them in accordance with the Federal Rules of Civil Procedure.

*3 To be clear, the Court's decision to permit plaintiff to file a fourth amended complaint should not be construed as a determination that a fourth amended complaint will survive a motion to dismiss. DOCS and/or any individual defendants may, if they so desire, move to dismiss the fourth amended complaint without the need for a pre-motion conference.

### III. FMLA Claim

Plaintiff's FMLA claim [FN2] is similarly barred by the Eleventh Amendment. *See Hale v. Mann,* 219 F.3d 61, 68–69 (2d Cir.2001); *Emmons v. City Univ. of N.Y.,* 715 F.Supp.2d 394, 418 (E.D.N.Y.2010). Any FMLA leave sought by plaintiff was for the purpose of addressing her own medical condition. While the Supreme Court's holding in *Nevada Dep't of Human Resources v. Hibbs,* 538 U.S. 721, 727–28, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003), recognized Congress's abrogation of state sovereign immunity with respect to the section of the FMLA addressing family-care leave, it did not explicitly hold that sovereign immunity is abrogated with respect to the section of the FMLA addressing leave for one's own health condition. Thus, the Second Circuit's opinion in *Hale v. Mann* controls, and sovereign immunity bars plaintiff's FMLA claims.

> FN2. Liberally construing plaintiff's handwritten attachment to the third amended complaint, the Court finds that an FMLA claim is asserted therein.

Furthermore, any FMLA claim would be barred by the statute of limitations. The limitations period for violations of the FMLA is two years. 29 U.S.C. § 2617(c)(1). If the violation was "willful," the lim-

itations period is three years. 29 U.S.C. § 2617(c)(2); *Smith v. Westchester County,* 769 F.Supp.2d 448, 463 (S.D.N.Y.2011). An alleged FMLA violation is "willful" if an employer either knew or recklessly disregarded whether its conduct violated the FMLA. *See Porter v. N.Y. Univ. Sch. of Law,* 392 F.3d 530, 531–32 (2d Cir.2004). Plaintiff was terminated in 2006, and did not commence her action until 2010. Her FMLA claim is barred by either statute of limitations.

The fact that plaintiff filed a grievance with the EEOC does not toll the statute of limitations applicable to her FMLA claim because the EEOC has no enforcement authority with respect to the FMLA and the statute contains no exhaustion provision. *See Ramirez v. New York City Bd. of Educ.,* 481 F.Supp.2d 209, 223 (E.D.N.Y.2007) (pendency of grievance procedure, or some other method of collateral review of an employment decision, does not toll the running of limitations periods) (citing *Delaware State Coll. v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).

Plaintiff's FMLA claim is dismissed, and plaintiff is not granted leave to re-plead such a claim.

### IV. Section 504 of the Rehabilitation Act of 1973

Plaintiff does not bring her claims pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Because of the liberal pleading requirements afforded to pro se litigants, the Court finds that plaintiff may have been able to assert a cause of action under that statute.

However, such a claim would also be barred by the statute of limitations. Section 504 actions are governed by statutes of limitations applicable to personal injury actions under state law. *Morse v. Univ. of Vermont,* 973 F.2d 122, 127 (2d Cir.1992). New York's statute of limitations for personal injury actions is three years. N.Y. CPLR § 214(5); *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1037 (2d Cir.1993) (applying New York's three-year statute of limitations to Section 504 claim).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5119574 (S.D.N.Y.)
**(Cite as: 2011 WL 5119574 (S.D.N.Y.))**

*4 Plaintiff did not file her first complaint until more than three years after she was terminated, and thus her claim would be untimely. Furthermore, as with her claims under the FMLA, plaintiff's EEOC grievance charge would not have tolled the statute of limitations. *Bates v. Long Island R.R. Co.,* 997 F.2d at 1037. Thus, any claims she could have raised under Section 504 would be barred.

Plaintiff is not granted leave to include a Section 504 claim in a fourth amended complaint.

### CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss the third amended complaint with respect to plaintiff's FMLA claim. The Court further GRANTS defendant's motion to dismiss plaintiff's ADA claim against defendant DOCS. (Doc. # 37).

Plaintiff is granted leave to file a fourth amended complaint by no later than November 7, 2011, asserting an ADA claim against any individual with the authority to reinstate her to her previous position. Any individuals against whom plaintiff seeks to proceed must be named in the caption of the complaint, and the complaint must include specific allegations in accordance with the Federal Rules of Civil Procedure.

Should defendant(s) move to dismiss the fourth amended complaint, they must do so by no later than November 28, 2011. Plaintiff's opposition to the motion to dismiss must be filed and served by December 12, 2011. Defendant(s)' reply must be filed by December 19, 2011.

The Clerk is instructed to terminate this motion.

SO ORDERED.

S.D.N.Y.,2011.
Redman v. New York State Dept. of Correctional Services
Slip Copy, 2011 WL 5119574 (S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Elsie PIERRE, Plaintiff,
v.
The NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, et al., Defendants.

No. 05 Civ. 0275(RJS).
June 1, 2009.

Elsie Pierre, pro se.

Steven N. Schulman and John M. Schwartz, Assistant Attorneys General, New York, NY., for Defendants.

MEMORANDUM AND ORDER
RICHARD J. SULLIVAN, District Judge.
*1 *Pro se* Plaintiff Elsie Pierre ("Plaintiff") brings this action against the New York State Department of Correctional Services ("DOCS"), and individual Defendants Brian Fischer and Carl Oken (collectively, with DOCS, "Defendants"), alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). Plaintiff contends that Defendants discriminated against her on the basis of sex, race, and disability, and that Defendants retaliated against her for engaging in conduct that is otherwise protected by these laws.

Before the Court is Defendants' motion for summary judgment as to each of Plaintiff's claims. For the reasons set forth below, Defendants' motion is granted and this case is dismissed.

I. BACKGROUND
A. Facts [FN1]

FN1. The following facts are taken from the Parties' Local Rule 56.1 Statements, the affidavits submitted in connection with the instant motion, and the exhibits attached thereto. The facts are undisputed unless otherwise noted. Where only one Party's 56.1 Statement is cited, the facts are taken from that Party's statement, and the other Party does not dispute the fact asserted or has offered no admissible evidence to refute that fact. Cognizant of Plaintiff's *pro se* status, the Court has independently reviewed the record in this case. The Court recites only those facts relevant to the disposition of Defendants' motion.

Plaintiff, a black female, started working as a corrections officer for DOCS on December 2, 1996, and was assigned to the Sing Sing Correctional Facility ("Sing Sing") after completing her initial training. (Defs.' 56.1 ¶¶ 2, 5.) Individual Defendant Brian Fischer ("Fischer") was the superintendent of Sing Sing at all relevant times, and has been commissioner of DOCS since January 2007. (*Id.* ¶ 3.) Individual Defendant Carl Oken ("Oken") was the deputy superintendent of administration at Sing Sing until July 2004, when he assumed the same post at Downstate Correctional Facility. (*Id.* ¶ 4.) Both Fischer and Oken are white males. (*Id.* ¶ 6.)

In opposing Defendants' motion for summary judgment, Plaintiff does not contend that anyone associated with DOCS, including the individual Defendants, made any racist, sexist, or other remarks from which a discriminatory or retaliatory motive could be inferred. (*See* Pl.'s 56.1 ¶ 7; Defs.' 56.1 ¶ 7.) Instead, Plaintiff relies on a series of allegedly adverse administrative actions taken by Defendants against her. (*See* Pl.'s 56.1 ¶ 7.) The Court will recount the undisputed facts relevant to each allegedly adverse administration action.

1. Leave Without Pay Status
The first adverse action cited by Plaintiff as

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
(Cite as: 2009 WL 1583475 (S.D.N.Y.))

evincing discrimination is her placement on "leave without pay" status from October 21, 2002 until November 22, 2002. Plaintiff's absence from work stemmed from a work-related injury that Plaintiff sustained to her left leg, hip, neck, and shoulder on August 12, 2002. (Defs.' 56.1 ¶ 8.) [FN2] By letter dated November 5, 2002, Oken informed Plaintiff that the personnel department had attempted to telephone her on October 11, 2002 and October 16, 2002 in order to request that she return to work on "light duty" [FN3] status. (Id. ¶ 10.) [FN4] There was no answer to either telephone call. (Id.) Plaintiff admits that she did not own an answering machine at the time. (Id.)

> FN2. The Parties do not appear to dispute that the various injuries suffered by Plaintiff were covered by the relevant workers' compensation laws, which provide that an employee sustaining a covered injury is entitled to, in sequence: (1) compensation leave with pay for a period not exceeding six months; (2) upon exhaustion of that compensation, accrued leave benefits; and (3) upon exhaustion of accrued benefits, leave with half pay benefits. (Defs.' 56.1 ¶¶ 8-9; see also Schulman Decl. Ex. 3.) Although the exact contours of these laws are not relevant to the Court's disposition of Defendants' motion for summary judgment, several of the allegedly adverse administrative actions cited by Plaintiff involve Defendants' alleged misapplications of these provisions.

> FN3. Plaintiff testified at her deposition that light duty entailed tasks such as "paperwork, answering phones[,] and stuff like that." (Schulman Decl. Ex. 1, Pl.'s Dep. Tr. at 42:15-17.)

> FN4. Although the letter was dated November 5, 2002 and postmarked November 8, 2002, Plaintiff claims not to have received the letter until November 22, 2002. (Defs.' 56.1 ¶ 10.)

As a result of Plaintiffs failure to respond to the personnel department's telephone calls, she was placed on "leave without pay" status, effective October 21, 2002. (Id.) The November 5, 2002 letter also stated that Plaintiff had the right to appeal this determination. (Id.) On November 20, 2002, Plaintiff was telephoned from Sing Sing and informed that she should report to work. (Id. ¶ 11.) Plaintiff reported to work on November 23, 2002. ( Id.) [FN5]

> FN5. Plaintiff admits that she cannot identify any discriminatory reason for the personnel department to lie about the attempted telephone calls. (Defs.' 56.1 ¶ 10; Pl.'s 56.1 ¶ 10.) Plaintiff also could not identify a discriminatory reason for Oken to misstate the facts in his November 5, 2002 letter. (Defs.' 56.1 ¶ 10; Pl.'s 56.1 ¶ 10.)

*2 On December 5, 2002, Plaintiff filed a union grievance complaining about her placement on "leave without pay" status for the period from October 21, 2002 to November 22, 2002. (Id. ¶ 13.) On January 15, 2003, Oken denied the grievance, in his capacity as the deputy superintendent of administration at Sing Sing. (Id.) However, on March 23, 2005, an arbitrator concluded that Plaintiff should not have been placed on "leave without pay" status from October 21, 2002 to November 22, 2002. (Id. ¶ 14.) Plaintiff acknowledges that she has since been made whole for the relevant time period. (Id.)

2. Placement on Unrestricted Duty
On November 20, 2002, when Plaintiff received the telephone call from Sing Sing informing her that she should report to work, she was also told that she would be placed on "light duty" status. (Id. ¶ 11.) However, when Plaintiff reported to work on November 23, 2002, she was assigned to process visitors and store their packages, an "unrestricted" post. (Id.) One day later, on November 24, 2002, Plaintiff reported a second work-related injury to her back, caused by bending while storing a visitor's package. (Id. ¶ 12.) Plaintiff received benefits

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

for this injury and did not return to work until January 2004. (*Id.* ¶¶ 12, 20).

The union grievance that Plaintiff filed on December 5, 2002 also complained about the assignment to "unrestricted" duty. (*Id.* ¶ 13.) Oken subsequently acknowledged that Plaintiff should not have been placed in a full duty post when she returned to work on November 23, 2002. (*Id.*)

### 3. First Termination for Excessive Leave
On August 7, 2003, DOCS sent Plaintiff a notice informing her that she would be terminated from employment as of September 7, 2003, for being cumulatively absent for more than one year. (*Id.* ¶ 16.) DOCS's policy specifically provides for the termination of employees who are absent from duty for more than one cumulative year due to a work-related disability. (*Id.; see also* Schulman Decl. Ex. 3 at A4 § H.) Plaintiff appears to have opposed this determination on the grounds that, *inter alia,* she suffered two distinct injuries, and therefore her yearlong absence was not "cumulative." (Pl.'s 56.1 ¶ 16.)

In or about September 2003, Plaintiff submitted documentation to DOCS from her personal doctor to support her contention that she was fit to return to work, but was informed by DOCS that documentation from her personal doctor was insufficient. (Defs.' 56.1 ¶ 17.) After submitting to an examination by a State Employment Health Services ("EHS") doctor, Plaintiff was reinstated to employment as of January 2, 2004. (*Id.* ¶ 20.) Plaintiff was reinstated with seniority effective from December 2, 1996, the date that she was hired. (*Id.*)

Plaintiff has introduced two letters into the record, which, she argues, demonstrate that male employees in similar situations were given more favorable treatment. (*See* Pierre Aff. ¶ 5; *see also* Pierre Aff. Exs. 1, 2.) The first letter is written by DOCS's "Director of Personnel," and is addressed to Michael Sanzo ("Sanzo"). (Pierre Aff. Ex. 1.) The letter, dated October 3, 2000, states that DOCS "had intended to terminate [Sanzo's] services, effective

September 21, 2000"; "[h]owever, due to the fact that [Sanzo has] recently requested ... [to] be allowed to return to duty, [this] action will be held in abeyance pending [the] medical examination by Employee Health Service to determine [Sanzo's] fitness to perform the duties of [his] position." (*Id.*)

***3** The second letter is written by DOCS's "Acting Director of Personnel," and is addressed to Joseph Foster ("Foster"). (Pierre Aff. Ex. 2.) The letter, dated December 30, 2004, was a "response to [Foster's] recent correspondence regarding [his] request to have [his] termination held in abeyance for one month based on an incorrect termination date." (*Id.*) The letter stated that, upon reviewing Foster's records, DOCS had determined that the termination date provided to Foster in an earlier letter had in fact been incorrect, and that his correct termination date was January 16, 2005. (*Id.*) The letter informed Foster that his workers' compensation leave and employment would be terminated effective January 16, 2005. (*Id.*) [FN6]

> FN6. Plaintiff, at her deposition, testified that Foster was a black male. (*See* Schulman Decl. Ex. 1, Pl.'s Dep. Tr. at 78:12.) The record does not appear to provide any information regarding Sanzo's race or ethnicity.

### 4. First Denial of Benefits
Plaintiff alleges that she was denied unemployment benefits for one month in December 2003, before her reinstatement in January 2004. (Defs.' 56.1 ¶ 19.) Plaintiff received a letter from the State Department of Labor stating that DOCS had challenged her benefits application on the grounds that she had been discharged for misconduct. (*Id.*) Plaintiff, however, contends that she was not terminated for misconduct. (Pl.'s 56.1 ¶ 19.) However, as noted, when Plaintiff was reinstated to employment as of January 2, 2004, she was reinstated with seniority efffective from December 2, 1996, the date that she was hired. (Defs.' 56.1 ¶ 20.)

### 5. First Removal of Property from Locker

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

Between Plaintiffs termination in September 2003 and her reinstatement in January 2004, Plaintiff's locker was opened and its contents were removed. (*Id.* ¶ 18.) On or about February 18, 2004, Plaintiff submitted an employee property claim, alleging a loss of property worth $878.90. (*Id.*) On April 28, 2004, Oken denied Plaintiffs claim. (*Id.*) Plaintiff thereafter filed a labor grievance, which was also denied. (*Id.*) Plaintiff appealed this denial, which was also denied. (*Id.*)

#### 6. Unfavorable Post Upon Return

When Plaintiff returned to work in January 2004, she was assigned to work the 3:00 p.m. to 11:00 p.m. shift, rather than the 8:00 a.m. to 4:00 p.m. shift to which she had been previously assigned. (*Id* . ¶ 21.) On January 5, 2004, Plaintiff, through the union steward, requested an "emergency shift change" to return to the earlier shift. (*Id.*) On January 21, 2004, Fischer denied the request, but stated that Plaintiff could request a shift change through the "regular process." (*Id.*)

#### 7. First Recovery of Overpayment

On January 7, 2004, DOCS notified Plaintiff that it intended to recover an overpayment of benefits in the amount of $4,503.02 which had been paid during the period between July 24, 2003 and September 17, 2003. (*Id.* ¶ 22.) The overpayment allegedly occurred because Plaintiff was paid a full salary during a period in which she was only entitled to the sick leave rate at half her normal pay. (*Id.*) Plaintiff thereafter filed a labor grievance through her union representative. (*Id.* ¶ 23.) On February 3, 2004, Oken reduced the proposed recovery rate, but otherwise denied Plaintiffs grievance. (*Id.*) Plaintiff later commenced an arbitration seeking restoration of the money withheld from her paychecks. (*Id* . ¶ 24.) On May 30, 2006, an arbitrator found in Plaintiff's favor. (*Id.*)

#### 8. Appointment as Officer in Charge of the Gym

*4 On March 29, 2004, Plaintiff received a position as Officer in Charge ("OIC") of the gym. (*Id.* ¶ 25.) Plaintiff alleges that prior to her posting, males had occupied the position, and were able to

eat lunch when the gym was closed during the inmate count. (*Id.*) Plaintiff alleges that after she had been on the post for a few days, the scheduling was changed, requiring her to report to the mess hall, eliminating that period as one available for eating lunch. (*Id.*) After Plaintiff was injured in May 2004, *see infra* Part I.A.12, Plaintiff claims to have learned that a male replaced her as OIC of the gym, and that the scheduling had reverted to the earlier procedure. (Defs.' 56.1 ¶ 25.) Thereafter, when Plaintiff returned to work in February 2008 and resumed her post as OIC of the gym, she claims that she was allowed to eat during the inmate count. (*Id.* )

#### 9. Second Denial of Benefits

Plaintiff contends that she was denied medical benefits to pay for a prescription on May 20, 2004. (*Id.* ¶ 27.) Plaintiff does not recall whether she filled the prescription and paid for it herself, and does not remember whether she submitted a complaint to recover the benefits, but she concedes that benefits were restored by DOCS six months later. ( *Id.;* Pl.'s 56.1 ¶ 27.)

#### 10. Second Recovery of Overpayment

On June 1, 2006, DOCS informed Plaintiff that it intended to recover a net overpayment of $706.68. (Defs.' 56.1 ¶ 32.) The overpayment allegedly occurred because Plaintiff had been placed on leave without pay status retroactive to March 4, 2006, but continued to receive half pay for eight work days through March 15, 2006. (*Id.*) By letter dated August 24, 2006, Fischer informed Plaintiff that she would be reimbursed for the recovery of the first overpayment, *see supra* Part I.A.7, through a restructuring of her pay schedule, but that the second overpayment would be recovered from Plaintiffs next paycheck. (*Id.*) Plaintiff has not filed a labor grievance in connection with this second recovery of overpayment. (*Id.*)

#### 11. Second Removal of Property from Locker

Plaintiff alleges that she lost a radio when her locker was opened during the period when she was absent from work for her third work-related injury.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

(*Id.* ¶ 33.) Plaintiff testified at her deposition that she received a letter from DOCS relating to this claim of lost properly dated May 11, 2005. (*See* Schulman Decl. Ex. 1, Pl.'s Dep. Tr. at 115:7-116:13.) Accordingly, the property must have been taken sometime between May 5, 2004, the date that Plaintiff sustained her third work-related injury, *see infra* Part 1.A.12, and May 11, 2005, the date that Plaintiff received the letter from DOCS.

12. Second Termination for Excessive Leave
On May 5, 2004, Plaintiff sustained her third work-related injury, and received another cycle of benefits under the workers' compensation laws. (Defs.' 56.1 ¶ 26.)

In early August 2005, DOCS initiated proceedings to terminate Plaintiff for excessive leave effective September 9, 2005. (*Id.* ¶ 31.) The "termination request memorandum" noted that, as of August 3, 2005, Plaintiff had been absent a total of 342 days due to her third work-related injury. (*Id.*) Plaintiff was sent notice of the termination by letter dated August 9, 2005. (*Id.*) At Plaintiff's request, the termination was held in abeyance pending a medical evaluation by an EHS doctor. (*Id.*) The evaluation was conducted on or about September 15, 2005, and Plaintiff was found by the EHS doctor to be unable to return to "unrestricted" duty. (*Id.*) Plaintiff contends, however, that the EHS doctor indicated that Plaintiff could perform "light duty." (Pl.'s 56.1 ¶ 31.)

*5 On October 6, 2005, Plaintiff was sent notice of DOCS's intent to terminate her employment. (Defs.' 56.1 ¶ 31.) Plaintiff disputed this termination. (*Id.* ¶ 34.) The matter was heard by a hearing officer who issued a "Decision and Recommendations" on October 12, 2007. (*Id.*) The hearing officer concluded that Plaintiff was fit to return to duty as of June 12, 2006, and recommended reinstatement with back pay and benefits to that date. (*Id.*) However, the hearing officer's recommendations were not binding on DOCS, which renders the final decision. (*Id.*)

Subsequent to the hearing officer's decision, Plaintiff was informed that she could not be reinstated without an evaluation by an EHS physician. (*Id.* ¶ 35.) Plaintiff applied for and received the evaluation. (*Id.*) Plaintiff returned to work on February 5, 2008. (*Id.* ¶ 36.) On February 15, 2008, DOCS issued its decision rejecting the hearing officer's recommendation, but noting that Plaintiff had been allowed to return to work. (*Id.*) DOCS only permitted Plaintiff to recover back pay from October 12, 2007. (*Id.*) Plaintiff has since received that back pay. (*Id.*)

On July 24, 2008, Plaintiff sustained a fourth work-related injury, this one to her knees and one foot, resulting in a new leave of absence. (*Id.* ¶ 37.) FN7

> FN7. Plaintiff was out of work due to this injury as of the date of the deposition taken in conjunction with this case, July 29, 2008. (Schulman Decl. Ex. 1. Pl.'s Tr.at 12:4-14.)

B. Pursuit of Administrative Remedies
Plaintiff filed a complaint with the State Division of Human Rights on or about February 24, 2003. (*Id.* ¶ 39.) The same complaint was also filed with the Equal Employment Opportunity Commission ("EEOC"). (*Id.; see also* Pierre Dep. Ex. C at C528-C529.) FN8 The EEOC complaint only refers to two of the above adverse administrative actions: (1) Plaintiff's placement on "leave without pay" status from October 21, 2002 to November 22, 2002, and (2) Plaintiff's placement on unrestricted duty rather than light duty upon Plaintiff's return to work on November 23, 2002. (Pierre Dep. Ex. C.) Plaintiff subsequently received a right to sue letter from the EEOC, which is dated October 22, 2004. (Defs.' 56.1 ¶ 40.)

> FN8. Defendants have attached, as exhibit 2 of the declaration of Steven N. Schulman, the various exhibits introduced during Plaintiff's deposition, and have labeled these exhibits as Exhibits A-O. The Court

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
(Cite as: 2009 WL 1583475 (S.D.N.Y.))

Page 6

will refer to these exhibits as "Pierre Dep. Ex. <A-0>."

On July 29, 2005, Plaintiff submitted an amended complaint to the State Division of Human Rights. (*Id.* ¶ 41; *see also* Schulman Decl. Ex. 4.) The amended complaint did not relate any facts occurring later than December 3, 2002, but added assertions of disability discrimination and retaliation. (Defs.' 56.1 ¶ 41; *see also* Schulman Decl. Ex. 4.)

On April 18, 2006, the State Division of Human Rights issued a determination of "No Probable Cause" regarding Plaintiffs complaint. (Defs.' 56.1 ¶ 42.) Specifically, the State Division of Human Rights found that:

Complainant has not presented material facts that a reasonable and prudent person would believe, based upon the investigative evidence that a violation of the Human Rights Law occurred. Complainant admits that a communication glitch involving a problem with receiving her mail kept Complainant from returning to work when she was supposed to.

**\*6** The complaint is therefore ordered dismissed and the file is closed.

(Pierre Dep. Ex. G.)

C. Procedural History
Plaintiff filed her initial Complaint before this Court on January 12, 2005 (Doc. No. 1), and filed an Amended Complaint on December 18, 2006 (Doc. No. 10). Defendants filed their Answer on March 26, 2007. (Doc. No. 17.) On September 4, 2007, this case was reassigned to the undersigned from the Honorable Kenneth M. Karas, District Judge. (Doc. No. 20.) Following the completion of discovery, Defendants filed their motion for summary judgment on November 18, 2008. (Doc. No. 37.) The motion was fully briefed on February 6, 2009.

II. STANDARD OF REVIEW
The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Bronx Household of Faith v. Bd. of Educ. of City of N.Y.,* 492 F.3d 89, 96 (2d Cir.2007). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *see Anderson,* 411 U.S. at 248 (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC,* 494 F.3d 99, 103 (2d Cir.2007). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.' " *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir.2007) (quoting *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir.1997)) (alteration in original).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994). Nonetheless, "summary judgment remains available for the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir.1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*7 *Schiano v. Quality Payroll Sys.,* 445 F.3d 597, 603 (2d Cir.2006) (quoting *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 69 (2d Cir.2001)); *see also Giarratano v. Edison Hotel,* No. 08 Civ. 1849(SAS), 2009 WL 464441, at *4 (S.D.N.Y. Feb. 24, 2009) ("Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where ... plaintiff has offered little or no evidence of discrimination." (internal quotation marks and citation omitted) (alteration in original)).

In deciding Defendants' motion for summary judgment, the Court is mindful of the fact that the submissions of a litigant proceeding *pro se* should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe,* 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)); *see also Ortiz v. McBride,* 323 F.3d 191, 194 (2d Cir.2003); *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999). Nonetheless, "proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz,* No. 93 Civ. 5981(WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Aug. 20, 1999) (quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir, 1991)).

### III. DISCUSSION
Plaintiff's Amended Complaint contains the following causes of action: (1) a claim for discrimination on the basis of race and gender brought pursuant to Title VII; (2) a claim for retaliation brought pursuant to Title VII; and (3) a claim for discrimination on the basis of disability brought pursuant to Title I of the ADA. (*See* Schulman Decl. Ex. 1, Pl.'s Dep. Tr. at 10:16-11:7.) The Court will first discuss Plaintiff's exhaustion of administrative remedies, before proceeding to assess Defendants' motion for summary judgment as to each of Plaintiff's claims. For the reasons stated below, the Court grants Defendants' motion for summary judgment in its entirety.

### A. Claims Against the Individual Defendants
As an initial matter, the Court notes that Plaintiff's Title VII and ADA claims against individual Defendants Oken and Fischer, insofar as such claims are alleged against them in their individual capacity, must fail as a matter of law. "The law is well settled that individuals cannot be held liable for Title VII and ADA violations." *Rodriguez v. Kenny,* No. 00 Civ. 8022(GBD), 2005 WL 3358479, at *1 (S.D.N.Y. Dec. 6, 2005) (collecting cases); *see also Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000) (per curiam) (citing *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995)), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998). Accordingly, Oken and Fischer's motions for summary judgment are granted.

### B. Exhaustion of Administrative Remedies
The exhaustion of administrative remedies is a precondition to bringing a Title VII claim in federal court. *See Francis v. City of New York & Human Res. Admin.,* 235 F.3d 763, 768 (2d Cir.2000). Specifically, "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). [FN9] This same limitation applies to employment discrimination claims made pursuant to the ADA, and thus applies to all of the claims brought by Plaintiff in this lawsuit. *See Santos v. City of New York,* No. 01 Civ. 0120(SAS), 2001 WL 1568813, at *2 (S.D.N.Y.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

Dec. 7, 2001) ("[U]nder the ADA, as under Title VII, a plaintiff must file a charge of discrimination with the EEOC prior to commencing an action for employment discrimination in federal court."); *Nweke v. Prudential Ins. Co. of Am.,* 25 F.Supp.2d 203, 214 (S.D.N.Y.1998) ( "The ADA has substantially the same subject matter jurisdiction requirements as Title VII.").

> FN9. Although in *Butts,* the Second Circuit referred to the requirement of raising claims before the EEOC as a matter of "jurisdiction," *see Butts,* 990 F.2d at 1401, the Second Circuit has since clarified that "the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement." *Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir.2000) (internal quotation marks and citations omitted).

**\*8** Plaintiff filed two complaints with the State Division of Human Rights, one on or about February 24, 2003, and one on July 29, 2005.[FN10] Plaintiff admits that neither of these complaints relate any facts occurring later than December 3, 2002. (*See* Defs.' 56.1 ¶ 41; Pl.'s 56.1 ¶ 41.) Accordingly, only two of the allegedly adverse administrative actions were properly brought before the EEOC: (1) Plaintiffs placement on leave without pay status from October 21, 2002 to November 22, 2002, and (2) Plaintiffs placement on unrestricted rather than light duty upon Plaintiffs return to work on November 23, 2002. (*See* Pierre Dep. Ex. C at C528-C529.)

> FN10. The record before the Court only establishes that the *first* complaint filed with the State Division of Human Rights was also filed with the EEOC (*see* Defs.' 56.1 ¶ 39); whether the *second* complaint filed with the State Division of Human Rights was also filed with the EEOC is unclear on the extant record (*see* Defs.' 56.1 ¶ 41). However, for purposes of the following

analysis, the Court will assume that the second complaint was also filed with the EEOC.

This fact does not necessarily preclude this Court's consideration of Plaintiffs claims based on subsequent conduct. As noted, a district court may also hear claims "based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts,* 990 F.2d at 1401. The Second Circuit has recognized three situations in which claims not alleged in an EEOC charge will be deemed "reasonably related": (1) where the claim brought in the civil action concerns conduct which would fall within the reasonable scope of the EEOC investigation; (2) where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge; and (3) where the claim alleges retaliation for filing the EEOC charge. *See id.* at 1402-03. The Court will consider the application of each of these categories in turn.

As the Second Circuit has explained, the first category of "related" conduct is essentially an allowance of loose pleading. *See id.* at 1402. Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel, and that the primary purpose of EEOC charges is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, courts have allowed claims not raised in an EEOC charge to be brought in a civil action where the conduct complained of would fall within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *See id.* "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.' " *See Williams v. New York City Hous. Auth.* 458 F.3d 67, 70 (2d Cir.2006) (quoting *Deravin v. Kerik,* 335 F.3d 195, 202 (2d Cir.2003)).

In this case, the Court finds that the two complaints filed with the EEOC failed to give the EEOC the requisite adequate notice of the sub-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

sequently alleged conduct. The complaints filed with the EEOC involve two discrete actions taken by Defendants: Plaintiff's placement on leave without pay status in October and November 2002 and her assignment to unrestricted duty in November 2002. There is nothing to suggest that an EEOC investigation of these two isolated incidents would also encompass the later, unrelated, adverse administrative actions taken against Plaintiff over the course of the next six years. *See Butts,* 990 F.2d at 1402 ("[T]he first promotion allegation was never raised in the November 22, 1989 EEOC charge and Butts did not file a second EEOC charge alleging either this or the two incidents she says occurred after she filed her charge. Since these charges were never presented to the EEOC, the district court was without jurisdiction to hear them."); *see also Math-irampuzha v. Potter,* 548 F.3d 70, 76 (2d Cir.2008) ("We do not think that the plaintiff's allegation of a single incident of aggression by [the defendant] could reasonably be expected to blossom into an investigation covering allegations of unrelated misconduct by [the defendant] dating back several years."); *McGuire v. United States Postal Serv.,* 749 F.Supp. 1275, 1287 (S.D.N.Y.1990) ("Judicial claims which serve to amplify, clarify or more clearly focus earlier EEO[C] complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate" (citation and internal quotation marks omitted)).

**\*9** As for the second category of "related" conduct, the Court finds that Plaintiff has failed to allege further incidents of discrimination carried out in "precisely the same manner" as the acts alleged in the EEOC charge. Insofar as Plaintiff actually alleges any "incidents of discrimination," these incidents each pertain to distinct adverse administrative actions; none of these actions were carried out in "precisely the same manner." *Cf. Okon v. Appia,* No. 06 Civ. 6810(CPS), 2008 WL 2245431, at \*8, 10 (E.D.N.Y. May 29, 2008) (finding that a sexual harassment claim based on inappropriate touching was not reasonably related to sexual harassment

claim raised in EEOC charge, which concerned allegedly inappropriate comments); *Bresloff-Hernandez v. Horn,* No. 05 Civ. 0384(JGK), 2007 WL 2789500, at \*8 (S.D.N.Y. Sep. 25, 2007) (finding that a failure-to-accommodate claim based on a denial of request for shift change was not one of discrimination "in precisely the same manner" as failure to accommodate claim based on failure to offer plaintiff a different position at earlier time).

Finally, as to the third category of "related" conduct under *Butts,* the Court notes that Plaintiff's Amended Complaint fails to *allege* that Defendants retaliated against her for filing her complaints with the EEOC. There is Second Circuit authority for finding that Plaintiff's had failed to exhaust adequately her administrative remedies under these circumstances.[FN11] Nevertheless, cognizant of Plaintiff's *pro se* status, the Court will construe the retaliation claims in her Amended Complaint as alleging retaliation for the filing of her complaints with the EEOC, and therefore deems Plaintiff's retaliation claims as being "reasonably related" to the claims contained in the complaints filed with the EEOC. Therefore, the Court will consider Plaintiff's factual allegations as they pertain to her claims for retaliation to the extent that they relate to events that occurred after the filing of her initial EEOC charge on February 24, 2003.

> FN11. *See Alfano v. Costello,* 294 F.3d 365, 382 (2d Cir.2002) ( "[T]he district court considered that while [the plaintiff's] federal complaint generally alleged 'retaliatory conduct' on the part of DOCS, the pleading alleged no link between that conduct and the filing of her EEOC charge. On appeal, [the plaintiff] argues that her complaint 'can be interpreted [to say] that the notices of discipline were in retaliation for her having filed an EEOC charge against DOCS.' However, [the plaintiff] did not allege that DOCS retaliated against her for filing an EEOC charge; her vague, conclusory accusations of 'retaliatory con-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

duct' are insufficient to meet the *Butts* requirement of a specific linkage between filing an EEOC charge and an act of retaliation." (citations omitted)).

In sum, Plaintiff's claims for retaliation survive, insofar as such claims are premised on Defendants' alleged retaliation against her for the filing of complaints with the EEOC. However, Plaintiff's claims for discrimination that are premised on conduct subsequent to Plaintiff's placement on leave without pay status and Plaintiff's placement on unrestricted duty are dismissed due to Plaintiff's failure to exhaust properly her administrative remedies.

### C. Discrimination Claims

Title VII makes employers liable for employment discrimination based on " 'race, color, religion, sex, or national origin.' " *Richardson v. Comm'n on Human Rights & Opportunities,* 532 F.3d 114, 119 (2d Cir.2008) (quoting 42 U.S.C. § 2000e-2(a)). Plaintiff brings claims under Title VII for employment discrimination based on race and sex.

### 1. Applicable Law

Since Plaintiff has not presented any evidence directly reflecting discriminatory animus, the Court reviews Plaintiff's discrimination claims under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973). *See also Woodman v. WWOR-TV, Inc.,* 411 F.3d 69, 76 (2d Cir.2005). The employee bears the initial burden of producing evidence sufficient to support a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802. The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and *"de minimis." See e.g., Woodman,* 411 F.3d at 76; *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 381 (2d Cir.2001).

*10 To establish a *prima facie* case of discrimination, a plaintiff must show (1) membership in a

protected class and qualification for the position; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 567 (2d Cir.2000). In regard to the fourth prong, an inference of discriminatory intent may be drawn from an "employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group." *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir.2001).

> When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment ... the plaintiff must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself....

> What constitutes "all material respects" ... varies somewhat from case to case ... [but] there should be "an objectively identifiable basis for comparability."

> *Graham v. Long Island R.R.,* 230 F.3d 34, 39, 40 (2d Cir.2000) (citations omitted.)

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to " 'articulate some legitimate, nondiscriminatory reason for the [adverse employment action].' " *Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir.2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Patterson,* 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)). " 'The ultimate burden of persuading the trier of fact that the defendant intentionally dis-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

criminated against the plaintiff remains at all times with the plaintiff.' " *Id.*

To meet this burden, Plaintiff may rely on evidence presented to establish her *prima facie* case, as well as additional evidence. It is not sufficient, however, for a plaintiff merely to show that she satisfies the " *'McDonnell Douglas'* minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation ... was false." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir.2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of Plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.; Connell v. Consol. Edison Co. of N. Y., Inc.,* 109 F.Supp.2d 202, 207-08 (S.D.N.Y.2000).

2. Analysis
**\*11** As noted, Plaintiff alleges that Defendants discriminated against her on the basis of her race and sex. Due to Plaintiff's failure to exhaust her administrative remedies, the Court has dismissed all of Plaintiff's claims for discrimination pursuant to Title VII except for the claims predicated on the two adverse administrative actions cited in the complaints that she filed with the EEOC, specifically: (1) Plaintiff's placement on leave without pay status from October 21, 2002 to November 22, 2002, and (2) Plaintiff's placement on unrestricted rather than light duty upon Plaintiff's return to work on November 23, 2002.

For purposes of considering Plaintiff's claims for race and sex discrimination pursuant to Title VII, the Court will assume that Plaintiff has satisfied the first three prongs of the *prima facie* standard under *McDonnell Douglas.* Plaintiff, however, has pointed toward *nothing* in the record to suggest that either of these two adverse administrative actions taken against her by Defendants occurred under circumstances giving rise to an inference of racial or sexual discrimination.[FN12]

FN12. For example, Plaintiff was specifically asked at her deposition the following question: "What is your evidence that [DOCS] acted in a discriminatory manner in this entire incident [involving Plaintiff's placement on leave without pay status from October 21, 2002 to November 22, 2002]." (Schulman Decl. Ex. 1, Pl.'s Dep. Tr. at 51:25-52:3.) Plaintiff responded:

> When you say what's my evidence the evidence is that they put me on leave without pay which they shouldn't without contacting me properly. Letter as it said was misplaced. He gave the direction for the letter to be mailed to me at a certain point in time and it was never mailed until his Ishmael was going through paperwork and found the letter and he had her change the dates and had her send it to me.

(*Id.* at 52:4-12.)

Plaintiff admits that no one associated with DOCS, including the individual Defendants, made any racist or sexist remarks, or any other remarks by which a discriminatory motive could be inferred. (*See* Pl.'s 56.1 ¶ 7; Defs.' 56.1 ¶ 7.) Further, Plaintiff fails to point to any instances of "disparate treatment" in which Plaintiff was treated less favorably than "employees not in the protected group" *Abdu-Brisson,* 239 F.3d at 468. The Court's independent review confirms that nothing in the record gives rise to an inference of discrimination based on Plaintiff's race or sex in regard to the two remaining adverse administrative actions. Although the standard for satisfying the *prima facie* burden is *"de minimis,"* Plaintiff must point towards *some* evidence that could give rise to an inference of discrimination on the basis of her race or sex. Failure to meet this standard necessitates the granting of summary judgment. *See, e.g., Uribe v. Kellogg's Snacks/Keebler, Inc.,* No. 05 Civ. 02959(PGG), 2009 WL 1098369, at \*5 (S.D.N.Y. Apr. 22, 2009); *Vilien v. Dep't of Educ. of City of New York,* No. 06

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

Civ. 3491(BSJ), 2009 WL 857458, at *4 (S.D.N.Y. Mar. 31. 2009). As Plaintiff has failed to meet her burden in establishing a *prima facie* case, the Court grants Defendants' motion for summary judgment on Plaintiff's claims for discrimination on the basis of race and sex pursuant to Title VII.

Further, even if the Court were to consider Plaintiff's unexhausted claims-based on the factual allegations not raised in the complaints that she filed with the EEOC-the Court's independent re- view of the record reveals only two instances that might plausibly be construed to give rise to an in- ference of discrimination: (1) the allegedly dispar- ate treatment of Sanzo and Foster, which Plaintiff suggests are evinced by the letters that she has in- troduced into the record, and (2) the allegedly fa- vorable treatment relating to the lunch schedule provided to males who held the OIC position.[FN13] Both of these instances pertain to alleged discrimin- ation on the basis of Plaintiff's sex. The Court will consider each in turn.

> FN13. During Plaintiff's deposition, she also noted that her union informed her about two men, (1) Frank Rotinik, a fellow corrections officer, who was allegedly ab- sent for more than one year without being terminated, and (2) Ronald Hansen, whose situation was not specified. (See Schulman Decl. Ex. 1, PL's Dep. Tr. at 132:8-133:18.) This testimony raises no triable issue of fact, as Plaintiff has relied solely on inadmissible hearsay and has in- troduced no admissible evidence in regard to these two men. *Cf. Siegel v. Metro-N. Commuter R.R. Co.,* No. 07 Civ. 6025(DC), 2009 WL 889985, at *2 (S.D.N.Y. Apr. 1, 2009) (noting that "the Court cannot consider hearsay on a motion for summary judgment"); *Scarangella v. Group Health Inc.,* No. 05 Civ. 5298(RJS), 2009 WL 764454, at *13 (S.D.N.Y. Mar. 24, 2009).

i. Defendants' Treatment of Sanzo and Foster

*12 Plaintiff has introduced two letters into the record regarding the treatment of two other employ- ees of DOCS, Sanzo and Foster, *see supra* Part I.A.3, and contends that these letters demonstrate that "similar [sic] situated male employees" were given more favorable treatment. (See Pierre Aff. ¶ 5.) The Court deems this to be an attempt to estab- lish that the adverse employment actions at issue in this case occurred under circumstances giving rise to an inference of sex discrimination through evid- ence of disparate treatment.

"A showing of disparate treatment-that is, a showing that the employer treated [P]laintiff less favorably than a similarly situated employee out- side h [er] protected group-is a recognized method of raising an inference of discrimination for pur- poses of making out a *prima facie* case." *Mandell v. County of Suffolk,* 316 F.3d 368, 379 (2d Cir.2003) (internal quotation marks omitted). In order to es- tablish a disparate treatment claim, Plaintiff must show that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself" *Id.* (internal quotation marks omitted). The question of whether two employees are "similarly situated" is generally a triable issue for the fact finder. *Id.; Graham v. Long Island R.R ., 230 F.3d 34, 39 (2d Cir.2000). Nonetheless, a plaintiff must offer sufficient evidence from which a jury could reasonably conclude that there was in- deed disparate treatment of similarly situated em- ployees. *See, e.g., Hayes v. Kerik,* 414 F.Supp.2d 193, 204 (E.D.N.Y.2006); *Spiegler v. Israel Disc. Bank of N.Y.,* No. 01 Civ. 6364(WK), 2003 WL 21983018, at *2 (S.D.N.Y. Aug. 19, 2003) ("A court can properly grant summary judgment [on a discrimination claim] where no reasonable jury could find the similarly situated prong met.") (citing *Harlen Assoc. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499-500 n. 2 (2d Cir.2001) ("This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.")).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

Here, Plaintiff has failed to offer any evidence by which a jury could reasonably conclude that there was disparate treatment of similarly situated employees. With regard to the first employee, Sanzo, Plaintiff has introduced no evidence to establish whether Sanzo and Plaintiff were "similarly situated." Moreover, Plaintiff has raised no triable issue of fact as to whether Plaintiff and Sanzo were disparately treated. After Sanzo requested a return to work, his termination was held in abeyance in October 2000, pending an evaluation by an EHS doctor. (Pierre Aff. Ex. 1.) Plaintiff was afforded these same opportunities both times that she was terminated for excessive leave. The August 7, 2003 letter from DOCS that informed Plaintiff that she would be terminated from employment as of September 7, 2003 also notified Plaintiff that she had "the right to apply ... for reinstatement to duty if you are medically fit prior to the effective date of your termination. If you so apply, you may be required to submit to a medical examination to determine your fitness to perform the essential functions of your position." (Schulman Decl. Ex. 6.) It is undisputed that Plaintiff did not avail herself of this opportunity; rather, Plaintiff submitted documentation from her personal doctor in September 2003, which was insufficient under DOCS's regulations. (Defs.' 56.1 ¶ 17.) When Defendants initiated the proceedings to terminate Plaintiff for the second time due to excessive leave, Plaintiff *did* request and receive an EHS evaluation, during which time her termination was held in abeyance. (Defs.' 56.1 ¶ 31.) Thus, Plaintiff was not similarly situated to Sanzo, and was not treated disparately when compared to Defendants' treatment of Sanzo.

**\*13** With regard to the second employee, Foster, the letter that Plaintiff has introduced into the record demonstrates that Foster's termination date was postponed for five weeks when he brought a clerical error to DOCS's attention. (Pierre Aff. Ex. 2.) This situation is not analogous to Plaintiff's, as she neither contends that Defendants failed to correct a *clerical* error, nor has adduced any evidence tending to suggest that a similar clerical error occurred in her circumstances.

Accordingly, Plaintiff has failed to establish a *prima facie* case of sex discrimination under Title VII predicated on Defendants' allegedly disparate treatment of Sanzo and Foster.

ii. OIC of the Gym

The second instance in the record that could plausibly give rise to a finding of discrimination on the basis of sex is Defendants treatment of Plaintiff while she was employed as OIC of the gym during the period between March and May 2004. As previously recounted, on March 29, 2004, Plaintiff received a position as OIC of the gym. (Def.'s 56.1 ¶ 25.) Plaintiff alleges that prior to her posting, the position had been held by males who were able to eat lunch when the gym was closed during the inmate count. (*Id.*) However, after Plaintiff had been assigned to the post for a few days, Plaintiff alleges that the schedule was changed, requiring her to report to the mess hall, thus preventing her from eating lunch at that time. (*Id.*) As elaborated by Plaintiff at her deposition:

[T]here is no official brakes [sic]. The breaks is that you fit it in when you can. The initial bid when I got the bid and the officers prior to me when they had the bid they used to once the gym is closed we do something called the count. When you do the count that's the period of time you utilize to eat. After I acquired the bid like three or four days later they change it so that I don't do no count. I report straight from the gym, straight up to the mess hall to feed the inmates so there is no break there for me to eat until maybe after the mess hall is done around one o'clock or whenever it's finished then when I come back down in between is where I could fit in to eat.

(Schulman Decl. Ex. 1, Pl.'s Dep. Tr. at 111:23-112:13.) In effect, Plaintiff is arguing that males in the OIC position were allowed to eat lunch during the inmate count; however, when Plaintiff, a female, was put in the OIC position, the position was changed so that Plaintiff had to eat lunch dur-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

ing some other period in the day.

Granting Plaintiff all of the inferences to which she is entitled, the Court finds that Plaintiffs treatment as OIC of the gym fails to constitute an "adverse employment action" for purposes of establishing a *prima facie* case for sex discrimination under Title VII. In the Second Circuit, an employee experiences an adverse employment action if she endures a "materially adverse change" in the terms or conditions of employment. *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000). Materially adverse employment actions include " 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.' " *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)). However, to qualify as "materially adverse," a change in employment conditions must be "more disruptive that a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks omitted). Here, the elimination of the inmate count period for Plaintiff's lunch break fails to rise to the level of a "materially adverse change" in the terms of her employment, especially given Plaintiff's concession that DOCS provides no official lunch breaks. (Schulman Decl. Ex. 1, Pl.'s Dep. Tr. at 111:23 (conceding that "there is no official brakes [sic]").) The "adverse effect" of Defendants' action in this case therefore was to alter the unofficial time at which Plaintiff would eat her lunch. The Court concludes that this fails to constitute an "adverse employment action." Cf. *Bowles v. New York City Transit Auth.,* Nos. 00 Civ. 4213, 03 Civ. 3073(BSJ), 2006 WL 1418602, at \*12 n. 26 (S.D.N.Y. May 23, 2006) (finding that "[t]he other actions [that the plaintiff] complains of-being warned regarding his use of sick leave, being assigned tasks outside his job classification, being denied the use of a vacation day to attend depositions, having 'confidential information regarding [his] medical status' revealed to other employees, being required to work through lunch on six

days ... do not rise to the level of 'adverse employment actions,' either individually or cumulatively" for purposes of Title VII); *Gibbs v. City of New York,* No. 02 Civ. 2424(LB), 2005 WL 497796, at \*9 (E.D.N.Y. Jan. 21, 2005) (finding that denial of extra fifteen minutes of lunch break and permission to eat at desk allegedly given to other employees was not adverse employment action); *Roff v. Low Surgical & Med. Supply, Inc.,* No. 03 Civ. 3655(SJF), 2004 WL 5544995, at \*7 (E.D.N.Y. May 11, 2004) (finding that "the requirement that [the plaintiff] clock in and out for lunch and take lunch at a specific time" did not constitute an adverse employment action). Accordingly, Plaintiff has failed to establish a *prima facie* case of sex discrimination under Title VII predicated on Defendants' disparate treatment of Plaintiff while she was OIC of the gym.

### D. Retaliation Claims

\*14 The Court also reviews Plaintiff's claims for retaliation brought pursuant to Title VII under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas. See, e.g., Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir.2005). To establish a *prima facie* case of retaliation, Plaintiff must show "(1) participation in a protected activity known to the defendant[s]; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Feingold v. New York,* 366 F.3d 138, 156 (2d Cir.2004) (internal quotations omitted); *see also Kessler v. Westchester County Dep't. of Soc. Servs.,* 461 F.3d 199, 205-06 (2d Cir.2006). As with Plaintiffs discrimination claims, although the burden at the *prima facie* stage is minimal, Plaintiff must proffer at least competent evidence of circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. *See Cronin v. Aetna Life Ins.,* 46 F.3d 196, 204 (2d Cir.1995).

With regard to the first prong of the *prima facie* case, the Court-cognizant of Plaintiff's pro se

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

status-assumes that Plaintiff is alleging that Defendants have retaliated against her for filing her two complaints with the EEOC, as these are the only "protected activities" that she identified at her deposition.[FN14] With regard to the second prong, the Court will assume that the adverse administrative actions enumerated above qualify as "employment actions disadvantaging Plaintiff for purposes of a retaliation claim. Accordingly, the Court's analysis of Plaintiff's retaliation claims will focus on the third prong of the *prima facie* case: whether there is a causal connection between the protected activity and the adverse employment action. Causation can be proved either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000).

> FN14. At Plaintiff's deposition, when asked by Defendants' counsel to identify any incidents of retaliation that Plaintiff suffered by Defendants, Plaintiff implied that her termination for excessive leave in September 2003 and her assignment to an undesirable post when she returned to work in January 2004 constituted retaliation for the filing of her first complaint with the State Division of Human Rights in February 2003. (*See* Schulman Decl. Ex. 1, Pl.'s Dep. Tr. at 57:5-58:14.) Later during her deposition, Plaintiff suggested that Defendants retaliated against her for the filing of a workers' compensation claim. (*See* Schulman Deck Ex. 1, Pl.'s Dep. Tr. at 112:22-113:12.) However, Plaintiffs filing of a workers' compensation claim is not a "protected activity" for purposes of Title VII. *See, e.g., Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000) ( "The term 'protected activity' refers to action

taken to protest or oppose statutorily prohibited discrimination."). In addition, Plaintiff apparently contends that Defendants initiated the proceedings to terminate her for excessive leave in August 2005 in retaliation for the filing of a workers' compensation claim in May 2004. For the reasons stated below, this time gap of more than one year precludes the finding of any causal connection between the purported protected activity and the adverse employment action. *See infra.*

Here, Plaintiff has failed to introduce any direct evidence of a causal connection between the filing of her EEOC complaints and the allegedly adverse administrative actions taken against her. The Court therefore applies the only standard by which Plaintiff could establish a causal connection: "that the protected activity was closely followed in time by the adverse [employment] action." *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1178 (2d Cir.1996). While the Second Circuit has articulated no "bright line" rule for when an alleged retaliatory action occurs too far in time from the exercise of a federal right to be considered causally connected, *Gorman-Bakos v. Cornell Co-op Extension of Schenectady City,* 252 F.3d 545, 554 (2d Cir.2001), it is well settled that when "mere temporal proximity" is offered to demonstrate causation, the protected activity and the adverse action must occur "very close" together, *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (internal quotation omitted). "[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.,* 528 F.Supp.2d 257, 275 (S.D.N.Y.2007) (collecting cases).

**\*15** Plaintiff filed her initial complaint with the State Division of Human Rights on or about February 24, 2003. (Defs.' 56.1 ¶ 39.) The first allegedly adverse administrative action taken by Defendants

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

against Plaintiff after the filing of this first complaint was the letter DOCS sent Plaintiff on August 7, 2003, informing her that she would be terminated from employment as of September 7, 2003, for having a cumulative absence of over one year. The Court finds that the time gap of six months between Plaintiffs filing of her complaint and this allegedly adverse administrative action precludes any inference of retaliation.

Plaintiff filed her second complaint with the State Division of Human Rights on July 29, 2005. (Defs.' 56.1 ¶ 41.) The first allegedly adverse administrative action taken against Plaintiff after the filing of the second complaint was the initiation of proceedings to terminate Plaintiff from employment for excessive leave as of September 9, 2005. As these proceedings were initiated in early August 2005, the Court finds that this time frame is brief enough to give rise to an inference of retaliation. Plaintiff has thus satisfied her burden in establishing her *prima facie* burden for retaliation. [FN15]

> FN15. Although the exact date of the second instance of the removal of property from Plaintiff's locker is unknown (Defs.' 56.1 ¶ 33), Plaintiff received a letter from DOCS relating to her second claim of lost property dated May 11, 2005 (*see* Schulman Decl. Ex. 1, Pl.'s Tr. at 115:7-116:13). Accordingly, the property could not have been taken subsequent to the filing of her second complaint with the State Division of Human Rights on July 29, 2005 and is therefore not relevant to this analysis. No other adverse administrative action took place within a time frame to give rise to an inference of retaliation in regard to Plaintiffs filing of a second complaint.

Accordingly, under step two of the *McDonnell Douglas* analysis, the burden shifts to Defendants to provide a legitimate, nondiscriminatory reason for their behavior. *Patterson,* 375 F.3d at 221 (observing that, under step two, the employer must satisfy its "burden of production" by "articulat[ing]

some legitimate, nondiscriminatory reason for the termination supported by admissible evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action" (internal quotations marks and citations omitted)). Defendants have met this burden by proffering admissible evidence in support of their nondiscriminatory reason for terminating Plaintiff's employment, specifically, that Plaintiff's employment was terminated due to her excessive absence from work for more than one year. (*See* Defs.' 56.1 ¶ 31.)

Proceeding to step three of the *McDonnell Douglas* analysis, the burden shifts back to Plaintiff "to show that the reason was merely a pretext for discrimination." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 38 (2d Cir.1994). "[A] reason cannot be proved to be a pretext ... unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515 (1993) (emphases and internal quotation marks omitted). Nevertheless, "[s]ummary judgment is appropriate ... only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact." *Carlton v. Mystic Transp ., Inc.,* 202 F.3d 129, 135 (2d Cir.2000).

The Court finds that there is insufficient evidence in the record for a reasonable jury to conclude that Defendants' proffered reasons for eliminating plaintiffs position are pretextual. Furthermore, "mere temporal proximity," by itself, which is all that Plaintiff relies on in this case, has been found by this Court to be insufficient to support a claim of retaliation at the summary judgment stage, at least where the defendant proffers a legitimate reason for the plaintiff's discharge with evidentiary support therefor. *See Murray v. Visiting Nurse Servs. of N.Y.,* 528 F.Supp.2d 257, 277 n. 14 (S.D.N.Y.2007) ; *see also, e.g., Vosatka v. Columbia Univ.,* No. 04 Civ. 2936(LAP), 2005 WL 2044857, at * 10 (S .D.N.Y. Aug. 25, 2005) ("Although the sequence and timing of events, alone, creates an inference of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

discrimination sufficient to satisfy plaintiff's burden in the first step of the *McDonnell Douglas* analysis, ... the timing of events alone, even if sufficient to meet the plaintiffs *prima facie* burden, cannot defeat summary judgment in the face of defendant's proffered legitimate reason." (internal quotation marks and citations omitted)) (collecting cases); *Smith v. Revival Home Health Care, Inc.,* No. 97 Civ. 4415(RJD), 2000 WL 335747, at *7 (E.D.N.Y. March 28, 2000) ("[M]ere temporal proximity cannot support a claim of retaliation."); *Chojar v. Levitt,* 773 F.Supp. 645, 655 (S.D.N.Y.1991) (finding that plaintiff could not refute employer's proffered reasons, and thus avoid summary judgment, by "merely pointing to the inference of causality resulting from the sequence in time of the events"). Accordingly, Plaintiff's claims for retaliation are dismissed.

### E. ADA Claims
*16 Plaintiffs claims for employment discrimination brought pursuant to Title I of the ADA have been partially dismissed due to Plaintiff's failure to exhaust her administrative remedies. *See supra* Part III.B. As with Plaintiff's claims for discrimination brought pursuant to Title VII, the Court has dismissed all of Plaintiff's claims brought pursuant to Title I of the ADA except for the claims predicated on the two adverse administrative actions cited in the complaints that she filed with the EEOC, specifically: (1) Plaintiff's placement on leave without pay status from October 21, 2002 to November 22, 2002, and (2) Plaintiffs placement on unrestricted rather than light duty upon Plaintiff's return to work on November 23, 2002. The Court finds that these remaining claims are also dismissed, for two independent reasons. First, Plaintiff has failed to establish that she was disabled within the meaning of the ADA, and therefore has failed to demonstrate a *prima facie* case for discrimination pursuant to the ADA. Second, Plaintiffs claims brought under the ADA are barred by the Eleventh Amendment.

### 1. *Prima Facie* Case
In order to establish a *prima facie* case of dis-

crimination under the ADA, Plaintiff must show that: (a) her employer is subject to the ADA; (b) she is disabled within the meaning of the ADA or perceived to be so by her employer; (c) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) she suffered an adverse employment action because of her disability. *See Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198 (2d Cir.2004). Here, Plaintiff has failed to establish that she was disabled within the meaning of the ADA.[FN16]

> FN16. The recent enactment of the ADA Amendments Act has broadened the definition of "disability," and enlarged the scope of protection available under the ADA. ADA Amendments Act of 2008, Pub .L. 110-325, 122 Stat. 3553 (2008). Although there is no reason to believe that the "impairments" alleged by Plaintiff would meet the definition of "disability" under the 2008 amendments, it is sufficient to note that the amendments, which took effect January 1, 2009, do not apply retroactively, and thus do not affect the analysis here. *See Kravar v. Triangle Servs., Inc.,* No. 06 Civ. 07858(RJH), 2009 WL 805807, at *4 n. 3 (S.D.N.Y., Mar. 27, 2009).

To establish the existence of a disability, Plaintiff must demonstrate that she suffers from a physical or mental impairment that "substantially limits one or more major activities," which are defined in the regulations promulgated by the EEOC as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working ." 45 C.F.R. § 84.3(j)(2)(ii). To be "substantially impaired" from performing a major life activity, Plaintiff must have an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198 (2002). Moreover, "[t]he

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

impairment's impact must also be permanent or long term." *Id.; see also* 29 C.F.R. § 1630.2 (j)(1)(i)(ii) (noting that a major life activity is substantially limited when an individual cannot perform an activity that an average person in the general population could perform, or faces significant restrictions in the "condition, manner, or duration under which the individual can ... perform [the] activity."); *Jackson v. Nor Loch Manor HCF,* 134 Fed. App'x. 477, 477 (2d Cir.2005) (finding that a surgical procedure requiring a temporary absence from work is "not enough to sustain a claim under the ADA"); *Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316-317 (2d Cir.1999) (finding that where an employee's automobile accident injuries caused a three-and-a-half month absence, with no evidence of substantial ongoing limitations, employee was not disabled within the meaning of the ADA); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 646 (2d Cir.1995) (finding that "a seven-month impairment [with unspecific residual, ongoing limitations] is of too short a duration and too vague an extent to be 'substantially limiting' "). Whether an individual is disabled under the ADA is determined on a case-by-case basis. *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 151 (2d Cir.1998).

**\*17** Granting Plaintiff all of the inferences to which she is entitled, the only one of her remaining, properly exhausted claims that could even possibly be construed as evincing discrimination on the basis of disability is her assignment to unrestricted duty, rather than light duty, in November 2002. [FN17] Plaintiff's purported "disability" related to this adverse administrative action arose from the injuries that she suffered to her left leg, hip, neck, and shoulder on August 12, 2002. (Defs.' 56.1 ¶ 8.) However, Plaintiff has adduced no evidence that these injuries were permanent or long term in nature, or that they substantially limited one or more major life activities. In fact, the only evidence in the record pertaining to these injuries is that the injury to Plaintiff's leg constituted a "bruise" or "internal tear." (Schulman Decl. Ex. 1, Pl.'s Dep.

Tr. at 31:2.) [FN18] Plaintiff has further failed to demonstrate, or even allege, that she had a "record of such impairment," or that Defendants "regarded" her as having such an impairment. *See* 42 U.S.C. § 12102(2). In sum, the Court finds that this evidence is insufficient to establish a *prima facie* case for discrimination under the ADA.

> FN17. Significantly, Plaintiff, in her moving papers, points to the November 2002 instance as the *only* evidence of discrimination based on disability. (*See* Pl.'s Mem. at 7.)

> FN18. When asked about these injuries at her deposition, Plaintiff testified that she did not break her leg, but that she suffered a "bruise" or an "internal tear." (*See* Schulman Decl. Ex. 1, Pl.'s Dep. Tr. at 30:21-31:2.) In regard to the other injuries, Plaintiff testified that she did not "recall" the nature of the injuries that she suffered, and was also unable to point out the most serious injury that she suffered. (*See id.* at 31:7-13.)

**2. Eleventh Amendment**

The Court also finds that Plaintiff's claims under the ADA are barred under the Eleventh Amendment. "The Eleventh Amendment bars suits in federal court by citizens against a state and its agencies, absent waiver of immunity and consent to suit by the state or abrogation of constitutional immunity by Congress." *Miller v. Carpinello,* No. 06 Civ. 12940(LAP), 2007 WL 4207282, at \*2 (S.D.N.Y. Nov. 20, 2007). In *Board of Trustees of Univ. of Al. v. Garrett,* 531 U.S. 356 (2001), the Supreme Court explicitly held that Congress did not validly abrogate state sovereign immunity in enacting Title 1 of the ADA. Accordingly, insofar as Plaintiff brings a claim under Title 1 of the ADA against DOCS, that claim is dismissed under the Eleventh Amendment. *Cf. Plumey v. New York State,* 389 F.Supp.2d 491, 496 n. 4 (S.D.N.Y.2005) (noting that "[a] claim against a state agency is essentially a claim against the State, and therefore im-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

plicates the Eleventh Amendment, because the State is 'a real, substantial party in interest' " (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984))).

Despite this holding, the Supreme Court in *Garrett* explicitly noted that private individuals could still sue states for violations of Title I of the ADA "for injunctive relief under Ex *parte Young .*" *Garrett,* 531 U.S. at 374 n. 9 ("[Title I of the ADA] can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young.*" ). "Under the well-known exception to [sovereign immunity under the Eleventh Amendment] set forth in *Ex parte Young,* 209 U.S. 123 (1908) ..., 'a plaintiff may sue a state official acting in his official capacity-notwithstanding the Eleventh Amendment-for prospective, injunctive relief from violations of federal law.' " *State Employees Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 95 (2d Cir.2007) (quoting *In re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir.2007)); *see also Frew ex rel. Frew v. Hawkins,* 540 U.S. 431, 437 (2004) ("To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a ' straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)); *see also Finch v. New York State Office of Children & Family Servs.,* 499 F.Supp.2d 521, 538 (S.D.N.Y.2007); *Ford v. Reynolds,* 316 F.3d 351, 355 (S .D.N.Y.2003).

**\*18** In this case, Plaintiffs claim for injunctive relief fails at the first step of this "straightforward inquiry," as Plaintiff has alleged no ongoing viola-

tion of Title I of the ADA in regard to her remaining claims. *Cf. State Employees,* 494 F.3d at 96 ("We are specifically required by *Ex parte Young* to examine whether there exists an ongoing violation of federal law." (citing *Verizon,* 535 U.S. at 645) (emphasis omitted)). The Court is mindful that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon,* 535 U.S. at 646; *see also Coeur d'Alene,* 521 U.S. at 281 ("An *allegation* of an ongoing violation of federal law ... is ordinarily sufficient" (emphasis added)). However, Plaintiff's Amended Complaint identifies no ongoing violation of Title I of the ADA in regard to the remaining claims that would be remedied by the issuance of an injunction by this Court. *Hattem v. Schwarzenegger,* No. 04 Civ.1944(GEL), 2004 WL 1192355, at \*2 (S.D .N.Y. May 27, 2004) ("[T]he authorities are clear that '[a] federal court must examine each claim in a case' separately in order to determine 'if the court's jurisdiction over that claim is barred by the Eleventh Amendment.' " (quoting *Pennhurst,* 465 U.S. at 121)). As noted, the only one of Plaintiff's remaining, properly exhausted claims that could be construed as evincing discrimination on the basis of disability is her assignment to unrestricted duty, rather than light duty, in November 2002. The Court finds that this isolated incident of alleged disability discrimination, in conjunction with conclusory language requesting unspecified injunctive relief,[FN19] is insufficient for purposes of *Ex parte Young. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (noting that the "exception" provided by *Ex parte Young* "is narrow: It applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past"); *cf. Jude v. New York State,* No. 07 Civ. 5890(RJS), 2009 WL 928134, at \*5 (S . D.N.Y. Mar. 30, 2009) (finding that *Ex parte Young* was satisfied when Plaintiff alleged that the defendants were *"continuing* to adhere to the approach that was used to revoke [the plaintiffs] liberty" and *"encouraging* its employees to violate the promulgated guidelines of executive law and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1583475 (S.D.N.Y.)
**(Cite as: 2009 WL 1583475 (S.D.N.Y.))**

Due Process of Parolees" (emphasis in original));
*Pasternak v. Baines,* No. 00 Civ. 0369(JTC), 2006
WL 2570982, at *9 (W.D.N.Y. Sept. 5, 2006)
(finding that *Ex parte Young* was not satisfied,
since the "plaintiff has alleged no ongoing viola-
tions of federal law, only discrete acts of past dis-
crimination and retaliation by defendant").

> FN19. Specifically, the last section of
> Plaintiffs Amended Complaint, in a sub-
> section entitled "Relief," requests that the
> Court grant, *inter alia,* the following relief;
> "That the Defendants be instructed by the
> court to enforce rules and regulations in a
> fair and impartial manner." (Pierre Dep,
> Ex. A at 16, Am. Compl. at 16.)

Accordingly, the Court finds that Plaintiff's
claims brought under Title I of the ADA are barred
under the Eleventh Amendment.

## IV. CONCLUSION

For the reasons set forth above, the Court
grants Defendants' motion for summary judgment
as to each of Plaintiff's claims. The Clerk of the
Court is respectfully directed to terminate the mo-
tion located at docket number 37 and to close this
case.

**\*19** SO ORDERED.

S.D.N.Y.,2009.
Pierre v. New York State Dept. of Correctional Ser-
vices
Slip Copy, 2009 WL 1583475 (S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.